[No. 42290-5-II.   Division Two.   February 20, 2013.]

TROY DANA ET AL., *Petitioners*, v. RICK PIPER ET AL., *Respondents*.

*Jon E. Cushman* and *Kevin Hochhalter* (of *Cushman Law Offices PS*), for petitioners.

*David S. Foster*; and *Patrick N. Rothwell* (of *Davis Rothwell Earle & Xochihua PC*), for respondents.

¶1 WORSWICK, C.J. — In their legal malpractice case against Sussman Shank LLP, Troy and Pamela Dana seek review of five pretrial discovery orders. Dana[1] argues that the trial court erred by (1) ruling that Dana impliedly waived the attorney-client privilege, (2) disqualifying Dana's counsel and their entire law firm, and (3) finding facts the record does not support. Because the trial court erred in ruling that Dana waived the attorney-client privilege, we vacate the orders and remand for further proceedings consistent with this opinion.

## FACTS

¶2 Troy Dana and Larry Gilliam owned all the shares in Hodges, Gilliam & Dana Investment Real Estate Inc. They hired Piper Group International LLC to broker the sale of a controlling stake in Hodges while retaining Dana as its chief executive officer. Piper Group found an interested buyer in CMN Inc.

---

[1] We use "Dana" to refer collectively to Troy and Pamela Dana, except as otherwise indicated.

¶3 Dana relied on the advice of John McCormick, an attorney at the law firm of Sussman Shank LLP, in reviewing a series of documents executing the sale to CMN. These documents included (1) a stock purchase agreement selling most of Dana's shares to CMN at a discounted price, (2) an "earn-out" agreement allowing Dana to recoup the discount, (3) a shareholder agreement establishing Dana's rights as a minority owner of Hodges, (4) a release of all of Dana's claims against Hodges, (5) a release of all of Dana's claims against Piper Group, (6) an agreement barring Dana from competing against CMN, and (7) an employment agreement retaining Dana as Hodges's chief executive officer for five years. Clerk's Papers (CP) at 11. The parties executed these documents and completed the sale on November 1, 2007.[2] No attorneys other than Sussman Shank advised Dana in this sale.

¶4 Dana later concluded that CMN undermined Hodges's performance and broke several promises it had made during the negotiations. On May 7, 2009, the Cushman Law Offices began representing Dana in litigation against CMN. Cushman had no involvement in the sale of Hodges to CMN. On June 5, 2009, with Cushman as his counsel, Dana sued CMN, alleging breach of the stock purchase agreement and violation of the fiduciary duty owed to Dana as a Hodges shareholder. On November 10, 2009, CMN fired Dana.

¶5 On November 20, 2009, Dana engaged an attorney of the firm Stokes Lawrence PS to negotiate a settlement as co-counsel. Dana settled his claims against CMN for approximately $258,000 on January 28, 2010.

¶6 On May 26, 2010, with Cushman as litigation counsel, Dana filed this suit against Sussman Shank and two of its attorneys, McCormick and Dallas Thomsen. Dana also

---

[2] Later, without representation by counsel, Dana entered into an independent contractor agreement with CMN on March 27, 2008.

named as defendants Piper Group and its principal, Rick Piper.[3]

¶7 Dana's amended complaint appears to allege legal malpractice, breach of fiduciary duty, fraud, and violation of the Consumer Protection Act, chapter 19.86 RCW.[4] The amended complaint does not reference Dana's earlier suit against or settlement with CMN.

¶8 Sussman Shank pleaded several affirmative defenses, one of which states, "Plaintiff Troy Dana sought and received advice of other advisors with respect to the transaction at issue. To the extent there is any fault by any advisor to plaintiff Troy Dana with respect to the underlying transaction, that fault was the responsibility of others, not [Sussman Shank]." CP at 16.

¶9 During discovery, Sussman Shank requested production of "the complete file of any and all attorneys or law firms who represented plaintiff Troy Dana in the litigation entitled *Dana vs. CMN, Inc.*, Thurston County case number 09-2-0138[8]-5." CP at 56. Dana objected, citing the attorney-

---

[3] The Piper defendants joined in Sussman Shank's response brief.

[4] Dana's amended complaint does not state specific causes of action, but it states:

> [Piper] and [Sussman Shank] owed duties to Dana. They breached those duties. [Sussman Shank] had actual conflicts of interest with Dana and failed to meet standards required of attorneys in Washington State in disclosing and dealing with these conflicts. [Piper] and [Sussman Shank] failed to protect Dana in connection with this transaction, which was undertaken [for] the benefit of the selling share holders. [Piper] and [Sussman Shank] ignored fiduciary and other duties they each owed to Dana and negotiated a deal that put Dana at a severe disadvantage. [Piper] and [Sussman Shank] put their own interests in collecting fees and commissions ahead of the interests of Dana, who hired them to protect his interests, and for whom they were negotiating this sale with CMN, Inc. [Sussman Shank] did not meet the minimum requirements of competency and fair dealing required of an attorney in the State of Washington, and breached the standard of care. McCormick, Thomsen and Sussman and Shank failed to comply with Washington State law and Rules of Professional Responsibility in this matter, including RPC 1.1, 1.2, 1.3, 1.4, 1.5, 1.6, 1.7, 1.8(b), 1.9, 1.13 (f)[, ](g), 1.18(d), 2.1, 2.3, 4.1, 4.3, 5.1, 5.2, 5.5, 7.3, 8.3, 8.4. Piper violated duties owed as a broker in the State of Washington under RCW 18.85 AND 18.86. As a result of breaches of duty by [Piper] and [Sussman Shank], Dana was damaged.

CP at 11-12.

client privilege. Sussman Shank moved to compel discovery, and the trial court ordered an in camera review of Cushman's case file.

¶10 After reviewing the case file in camera, the trial court explained, "[I]t is material[;] if not to liability, [then] it goes to damages and that's the real question here." Verbatim Report of Proceedings (VRP) (Feb. 25, 2011) at 3. The trial court continued, "[I]t's going to become all discoverable. That's how I see it. It's really clear to me. It really goes to damages . . . and it really needs to come in." VRP (Feb. 25, 2011) at 3-4. The trial court entered an order on February 25, 2011, granting Sussman Shank's motion to compel discovery and ruling that Dana waived the attorney-client privilege with respect to the Cushman attorneys involved in his suit against CMN.

¶11 Dana moved for a protective order seeking (1) to restrict disclosure of the case file to the defendants, defense counsel, and expert witnesses; (2) to restrict disclosure of documents in the case file not relevant to damages; and (3) to prohibit depositions of the Cushman attorneys. Dana also moved for reconsideration of the February 25 order and for certification of a question for discretionary review. In two orders, the trial court denied both motions at a hearing on March 11, 2011.[5] On March 14, 2011, Dana disclosed Cushman's 1,291-page case file from the suit against CMN.

¶12 Dana filed a second motion for a protective order seeking to prohibit Sussman Shank from deposing the Cushman attorneys. Dana argued that depositions were inappropriate because if the attorneys became likely witnesses, they could be disqualified from representing him. Concurrently, Sussman Shank noted the depositions of two Cushman attorneys, a former Cushman attorney, and the Stokes Lawrence attorney. On May 27, 2011, the trial court

---

[5] One order clarified that "[t]he attorney-client privilege is not waived as to the Cushman firm's file in its representation of [Dana] in this legal malpractice suit." CP at 293.

entered an order denying the second motion for a protective order without further explanation.

¶13 Also on May 27, the trial court entered an order disqualifying the Cushman Law Offices from representing Dana. The trial court ruled that depositions of the Cushman attorneys were "relevant and discoverable, for the same reason the file materials of those attorneys were relevant and discoverable." CP at 438-39. Further, the trial court found that the Cushman attorneys' opinions and testimony about the prior litigation were "central" to the malpractice lawsuit, that Sussman Shank alleged fault of others as an affirmative defense, and that the Cushman attorneys' testimony might disadvantage Dana. The court concluded that because Cushman represented Dana on a contingency fee basis, "[i]t is a conflict of interest for the Cushman lawyers to be both witnesses in this litigation, and financial beneficiaries to a particular outcome of the litigation." CP at 439. The order stayed all discovery, including the depositions, for five months to allow Dana to obtain new counsel.

¶14 Dana then sought discretionary review of the four discovery orders[6] and the disqualification order. We granted Dana's motion. Order Granting Mot. to Modify, *Dana v. Piper*, No. 42290-5-II, at 1 (Wash. Ct. App. Oct. 12, 2011).

## ANALYSIS

### I. ATTORNEY-CLIENT PRIVILEGE

¶15 Dana argues that the trial court erred in ruling that he waived the attorney-client privilege with respect to the

---

[6] As mentioned above, the four discovery orders are (1) the February 25, 2011 order compelling discovery of the case file; (2) the March 11, 2011 order denying Dana's motion for reconsideration and request for certification of an appeal; (3) the March 11, 2011 order denying Dana's first motion for a protective order to limit disclosure of the case file; and (4) the May 27, 2011 order denying Dana's second motion for a protective order to prohibit attorney depositions. The February 25 order's ruling that Dana waived the attorney-client privilege is essential to all four discovery orders and to the disqualification order.

Cushman attorneys who represented him in his prior suit against CMN. We agree.

## A. *Threshold Issues*

¶16 As threshold matters, Sussman Shank argues that (1) we cannot grant relief because Pamela Dana is not a party to this petition and (2) part of Dana's petition is moot. We disagree.

### 1. *Parties to This Petition*

¶17 Sussman Shank argues that because Pamela Dana failed to file a timely notice of discretionary review, the trial court's discovery orders and disqualification order will still apply to Pamela Dana regardless of the outcome of our review. We exercise our discretion under RAP 1.2(c) and allow Pamela Dana to join Troy Dana's petition.

¶18 The parties do not dispute that Troy Dana filed a timely notice of discretionary review. Dana concedes that due to a "clerical error," Pamela Dana was not named as a petitioner in the initial notice. Reply Br. at 18. Likewise, Dana does not contest Sussman Shank's assertion that Dana added Pamela Dana in an amended notice, which was filed after expiration of the period for filing the notice.

¶19 RAP 1.2(c) provides that we "may waive or alter the provisions of any of these rules in order to serve the ends of justice." The facts of this case justify a waiver of the deadline in RAP 5.2(f) as applied to Pamela Dana. It is clear from the record that Troy Dana always intended to include Pamela Dana in this petition and that her omission is simply a scrivener's error. It is also clear that the omission of Pamela Dana's name from documents in the file below occurred repeatedly.[7] The ends of justice are served by accepting Dana's amended notice of discretionary review.

---

[7] Counsel for Sussman Shank drafted all five of the orders that Dana challenges. Two of these orders do not name Pamela Dana in the caption or anywhere else in the order.

## 2. *Mootness*

¶20 Sussman Shank also argues that Dana's petition for review of the order compelling discovery of Cushman's case file is moot because Dana has already disclosed the case file. We disagree.

¶21 A case is moot where it presents solely academic questions and the reviewing court cannot grant effective relief. *State v. Turner*, 98 Wn.2d 731, 733, 658 P.2d 658 (1983). Here, Dana disclosed the case file to Sussman Shank on March 14, 2011. Dana asks us to "remand for further proceedings, including appropriate orders to protect Mr. Dana's attorney-client privilege." Br. of Pet'r at 18. Although no bell can be unrung, we are in a position to grant effective relief in this case. Therefore, the petition for review of the order compelling discovery is not moot.

## B. *Waiver of the Attorney-Client Privilege*

¶22 Dana argues that the trial court abused its discretion when it entered discovery orders finding that Dana waived the attorney-client privilege, disclosing the Cushman attorneys' case file, and allowing depositions of the Cushman attorneys. We agree.

¶23 Generally, we review discovery orders for an abuse of discretion. *McCallum v. Allstate Prop. & Cas. Ins. Co.*, 149 Wn. App. 412, 419, 204 P.3d 944 (2009). A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *Dix v. ICT Grp., Inc.*, 160 Wn.2d 826, 833, 161 P.3d 1016 (2007). A court necessarily abuses its discretion when basing its decision on an erroneous view of the law or applying an incorrect legal analysis.[8] *Dix*, 160 Wn.2d at 833.

---

[8] Washington cases have not directly analyzed the standard of review of a trial court's discovery order determining whether an attorney-client privilege has been waived. Though the *Pappas v. Holloway* court did not discuss the standard of review, it reviewed the trial court's decision de novo. 114 Wn.2d 198, 204-09, 787 P.2d 30 (1990); *see also Brundridge v. Fluor Fed. Servs., Inc.*, 164 Wn.2d 432, 441,

■■ ¶24 A party is not entitled to discovery of information from privileged sources. CR 26(b)(1); *Soter v. Cowles Publ'g Co.*, 162 Wn.2d 716, 745, 174 P.3d 60 (2007). RCW 5.60.060(2)(a) codifies the attorney-client privilege by providing that "[a]n attorney or counselor shall not, without the consent of his or her client, be examined as to any communication made by the client to him or her, or his or her advice given thereon in the course of professional employment."

¶25 The attorney-client privilege exists to encourage free and open attorney-client communication by creating an assurance to the client that his communications will not be disclosed to others. *Pappas v. Holloway*, 114 Wn.2d 198, 203, 787 P.2d 30 (1990). "The privilege is imperative to preserve the sanctity of communications between clients and attorneys." *Dietz v. John Doe*, 131 Wn.2d 835, 851, 935 P.2d 611 (1997). Our Supreme Court has long recognized that " '[t]o require the counsel to disclose the confidential communications of his client to the very court and jury which are to pass on the issue which he is making, would end forever the possibility of any useful relation between lawyer and client.' " *Dike v. Dike*, 75 Wn.2d 1, 10, 448 P.2d 490 (1968) (quoting HENRY S. DRINKER, LEGAL ETHICS 133 (1953)).

¶26 The attorney-client privilege can be waived. *Dietz*, 131 Wn.2d at 850. By suing his attorney for malpractice, a client impliedly waives the privilege with respect to the defendant attorney and with respect to all other attorneys who represented the client in the underlying matter of the malpractice suit. *Pappas*, 114 Wn.2d at 206; *Stern v. Daniel*, 47 Wash. 96, 98, 91 P. 552 (1907); *see* RPC 1.6(b)(5).

___

191 P.3d 879 (2008) (" 'Whether facts on which a claim of waiver is based have been proved, is a question for the trier of the facts, but whether those facts, if proved, amount to a waiver is a question of law.' " (quoting *Advantor Capital Corp. v. Yeary*, 136 F.3d 1259, 1267 (10th Cir. 1998))). Federal courts have determined that waiver of the attorney-client privilege in this circumstance is a mixed question of law and fact. *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995) (citing *United States v. de la Jara*, 973 F.2d 746, 749 (9th Cir. 1992)). Because we hold that the trial court abused its discretion by basing its decision on an erroneous view of the law, we need not decide if a different standard of review applies.

¶27 Arguing *Pappas*, Sussman Shank claims Dana impliedly waived his attorney-client privilege with respect to the Cushman attorneys because Dana sued Sussman Shank for malpractice. We disagree.

¶28 In *Pappas*, attorney Pappas sued a client named Holloway for fees, and Holloway counterclaimed for legal malpractice against Pappas, who had represented her in an underlying lawsuit. 114 Wn.2d at 200-01. Pappas had represented Holloway in the lawsuit for three years, until withdrawing one month before trial. 114 Wn.2d at 200. In the same lawsuit, three other attorneys also represented Holloway. 114 Wn.2d at 200. Pappas impleaded the other attorneys and sought discovery of some of their files, but the attorneys objected on the basis of Holloway's attorney-client privilege. 114 Wn.2d at 202. In determining how far the implied waiver extends, our Supreme Court both (1) analyzed out-of-state cases and (2) applied the so-called *Hearn* test, and held that by filing her counterclaim for legal malpractice, Holloway impliedly waived the attorney-client privilege with respect to all attorneys who represented her in the same underlying lawsuit. 114 Wn.2d at 206, 208 (citing *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975)).

¶29 In so doing, the *Pappas* court distinguished its facts from those in *Jakobleff v. Cerrato, Sweeney & Cohn*, 97 A.D.2d 834, 835, 468 N.Y.S.2d 895 (1983). 114 Wn.2d at 205-06. In *Jakobleff*, the plaintiff sued her former attorneys for negligent representation in her divorce settlement. *Pappas*, 114 Wn.2d at 205. As an affirmative defense, the former attorneys asserted that the plaintiff failed to mitigate damages because she did not sue her ex-husband. *Pappas*, 114 Wn.2d at 205. To prove this defense, the former attorneys sought discovery of the plaintiff's privileged communications with her present attorney about suing the ex-husband. *Pappas*, 114 Wn.2d at 205. The *Jakobleff* court held:

> "By bringing an action against her former attorneys for legal malpractice, plaintiff has placed her damages in issue, and

> defendants may . . . raise the defense of plaintiff's failure to mitigate damages . . . . However, it simply cannot be said that plaintiff has placed her privileged communications with her present attorney in issue . . . ."

*Pappas*, 114 Wn.2d at 205-06 (quoting *Jakobleff*, 97 A.D.2d at 835). The *Pappas* court then explained,

> The distinction between the two cases rests largely on the fact that the plaintiff's present attorney in *Jakobleff* did not participate in the underlying litigation which gave rise to the malpractice claim . . . . Consequently, any communications between this attorney and plaintiff, which would have taken place after the underlying divorce became final, would have no effect upon the malpractice issue raised in plaintiff's complaint.

114 Wn.2d at 206. Thus, *Pappas* held that the attorney-client privilege is not waived where the protected communications occurred only after the end of the underlying matter giving rise to the malpractice claim. *1st Sec. Bank of Wash. v. Eriksen*, No. CV06-1004RSL, 2007 WL 188881, at *2, 2007 U.S. Dist. LEXIS 4449, at *4 (W.D. Wash. Jan. 22, 2007) (applying Washington law).

■ ¶30 The facts of this case are similar to those of *Jakobleff*. Most importantly, Dana and Cushman did not communicate about this malpractice suit's underlying matter—the sale of Hodges to CMN—until after the sale became final. Thus, any communications between Dana and Cushman could have no effect on Sussman Shank's alleged malpractice in representing Dana during the underlying matter.

¶31 Further, like the defendant in *Jakobleff*, Sussman Shank seeks to discover attorney-client communications to prove a defense. But Sussman Shank's assertion of that defense cannot waive Dana's privilege; even though Dana has put his *damages* at issue, he did not put his *communications with Cushman* at issue. *See Pappas*, 114 Wn.2d at 205-06; *Jakobleff*, 97 A.D.2d at 835-36. Under these cases, Dana did not waive the privilege.

¶32 Sussman Shank further relies on *Rutgard v. Haynes*, 185 F.R.D. 596 (S.D. Cal. 1999), to argue that the fact finder must have the Cushman attorneys' case file to determine the reasonableness of Dana's settlement with CMN. But the decision in *Rutgard* has been called "an outlier." *Woodbury Knoll, LLC v. Shipman & Goodwin, LLP*, 305 Conn. 750, 48 A.3d 16, 37 (2012).[9] And in our view, *Rutgard* mischaracterized two separate suits as one "underlying matter."[10] *See* 185 F.R.D. at 599. We therefore decline to follow *Rutgard*.

¶33 Contrary to Sussman Shank's argument, a fact finder can determine whether Dana's settlement with CMN was objectively reasonable by comparing the strength of Dana's claims to the terms of the settlement—without referring to the subjective beliefs of the Cushman attorneys. *See Fischel & Kahn, Ltd. v. van Straaten Gallery*, 189 Ill. 2d 579, 727 N.E.2d 240, 246, 244 Ill. Dec. 941 (2000); *1st Sec. Bank*, 2007 WL 188881, at *3, 2007 U.S. Dist. LEXIS 4449, at *9.

¶34 In *Pappas*, our Supreme Court also applied the three-part *Hearn* test, without stating whether it governed all cases of implied waiver of the attorney-client privilege.[11] *Pappas*, 114 Wn.2d at 207-08 (citing *Hearn*, 68

---

[9] As *Woodbury* noted, *Rutgard* based much of its holding on *Fischel & Kahn, Ltd. v. van Straaten Gallery, Inc.*, 301 Ill. App. 3d 336, 703 N.E.2d 634, 234 Ill. Dec. 773 (1998). *See Rutgard*, 185 F.R.D. at 598-99. But after *Rutgard* was decided, the Supreme Court of Illinois overturned the decision in *Fischel & Kahn*. *Fischel & Kahn, Ltd. v. van Straaten Gallery, Inc.*, 189 Ill. 2d 579, 727 N.E.2d 240, 246, 244 Ill. Dec. 941 (2000). Thus, "[*Rutgard's*] reasoning stands on questionable grounds." *Woodbury*, 48 A.3d at 37.

[10] In the terminology of these legal malpractice cases, the "underlying matter" is the event that gives rise to the malpractice claim. *1st Sec. Bank*, 2007 WL 188881, at *3, 2007 U.S. Dist. LEXIS 4449, at *7-8; *see Pappas*, 114 Wn.2d at 206, 208. Consequently, the underlying matter here is the sale of Hodges to CMN—not, as Sussman Shank would have it, Dana's litigation against CMN.

[11] The *Pappas* court acknowledged criticism of the *Hearn* test as " 'lead[ing] to automatic waiver even when there has been no misuse by the privilege-holder or unfairness to his opponent.' " 114 Wn.2d at 207-08 (quoting *Succession of Smith v. Kavanaugh, Pierson & Talley*, 513 So. 2d 1138, 1145 (La. 1987)). But the *Pappas* court "disagree[d] with this criticism of *Hearn* in the context of the present case." 114 Wn.2d at 208.

F.R.D. at 581). According to the *Hearn* test, the privilege is waived where

> (1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Pappas*, 114 Wn.2d at 207. In addition, the *Hearn* test will waive the privilege only where allowing the privilege to prevent disclosure would be manifestly unfair to the opposing party. *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995); *accord Pappas*, 114 Wn.2d at 207-08.

¶35 The *Hearn* test has received sharp criticism. In the Third Circuit's view, "While [*Hearn*] dress[es] up [its] analysis with a checklist of factors, [it] appear[s] to rest on a conclusion that the information sought is relevant and should in fairness be disclosed." *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994). In addition, the Second Circuit has noted that " '*Hearn* is problematic insofar as there are very few instances in which the *Hearn* factors, taken at face value, do not apply and, therefore, a large majority of claims of privilege would be subject to waiver.' " *In re County of Erie*, 546 F.3d 222, 227 (2d Cir. 2008) (quoting Mem. and Order, *Pereira v. United Jersey Bank*, Nos. 94 CIV. 1565 & 1844, 1997 WL 773716, at *3, 1997 U.S. Dist. LEXIS 19751, at *8 (S.D.N.Y. Dec. 11, 1997)). But we do not read *Pappas*, in applying the *Hearn* test, to announce a sweeping implied waiver doctrine that would swallow the common law attorney-client privilege. To the contrary, the *Pappas* court recognized "the danger of making illusory the attorney-client privilege in legal malpractice actions."[12] *Pappas*, 114 Wn.2d at 206.

---

[12] Sussman Shank does not appreciate this danger. At oral argument, we supposed that (1) Dana, represented by Cushman, had filed a single suit alleging

¶36 Recognizing that danger, we apply the *Hearn* test to the present case. The parties agree that Sussman Shank has met the first part of the test because Dana's commencement of the malpractice suit against Sussman Shank qualifies as an affirmative act. But the parties dispute whether Sussman Shank has met its burdens on the second and third parts of the test.[13] We hold that Sussman Shank fails to carry its burdens on the second and third parts of the *Hearn* test.

¶37 As to the *Hearn* test's second part, Sussman Shank fails to show that Dana put his protected communications at issue. *See Pappas*, 114 Wn.2d at 208. The question here is not simply whether the protected communications are at issue but whether Dana's commencement of this legal malpractice suit put them at issue. *See Pappas*, 114 Wn.2d at 208; *1st Sec. Bank*, 2007 WL 188881, at *3, 2007 U.S. Dist. LEXIS 4449, at *8-9. To establish liability in a legal malpractice suit, the plaintiff must show (1) the existence of an attorney-client relationship, (2) a duty on the part of the lawyer, (3) a breach of the duty, and (4) causation between the breach and an injury to the client. *Halvorsen v. Ferguson*, 46 Wn. App. 708, 711, 735 P.2d 675 (1986). Dana's complaint does not mention his settlement with CMN or his communications with Cushman. The complaint involves only Sussman Shank's performance in facilitating Dana's sale of his company to CMN. Therefore, Dana did not put protected communications at issue by suing Sussman Shank for malpractice. *Accord 1st Sec. Bank*, 2007 WL 188881, at *3, 2007 U.S. Dist. LEXIS 4449, at *8-9.

CMN's breach of contract and Sussman Shank's malpractice and (2) Dana settled with CMN before trial. We inquired: Would Dana have impliedly waived his attorney-client privilege with Cushman in the trial against Sussman Shank? Counsel for Sussman Shank answered in the affirmative, provided that the privileged communications were relevant to the malpractice suit. Wash. Court of Appeals oral argument, *Dana v. Piper*, No. 42290-5-II (Oct. 19, 2012), at 20 min., 38 sec.—23 min., 5 sec. In our view, that result would render the attorney-client privilege illusory by transforming the privilege into a rule of mere relevance.

[13] Neither party discusses whether maintaining the privilege would be "manifestly unfair" here.

¶38 Likewise, in the third part of the test, Sussman Shank has failed to show that the Cushman case file is "vital" to its case. Protected communications are vital to a party's case when they contain information about a disputed issue that is not available from any other nonprivileged source. *United States v. Amlani*, 169 F.3d 1189, 1195-96 (9th Cir. 1999). But protected communications are not vital to a party's case when there are other sources of indirect evidence about the issue. *Amlani*, 169 F.3d at 1195 (quoting *In re Geothermal Res. Int'l, Inc.*, 93 F.3d 648, 653 (9th Cir. 1996)).

¶39 Sussman Shank argues that Cushman's involvement in the *settlement* of Dana's claims against CMN caused the damages Dana now seeks to recover from Sussman Shank. This is, in reality, an argument that the settlement with CMN was unreasonable. Thus, the disputed issue is the objective reasonableness of Dana's settlement with CMN. *See Mut. of Enumclaw Ins. Co. v. T&G Constr., Inc.*, 165 Wn.2d 255, 264, 199 P.3d 376 (2008). If Dana's settlement with CMN was unreasonable, then the trial court will determine the value of a reasonable settlement with CMN, and this reasonable amount will offset Dana's recovery from Sussman Shank. *See Diaz v. State*, 175 Wn.2d 457, 466, 285 P.3d 873 (2012) (quoting RCW 4.22.060(2)). Nine factors inform the trial court's determination of the settlement's objective reasonableness, and none of these factors depends on whether Dana or the Cushman attorneys considered the settlement reasonable.[14] *See Mut. of Enumclaw*, 165 Wn.2d at 264. Therefore Dana's protected communications with his Cushman attorneys about the *subjective* reasonableness of the settlement

---

[14] The factors are "(1) the releasing party's damages; (2) the merits of the releasing party's liability theory; (3) the merits of the released party's defense theory; (4) the released party's relative fault; (5) the risks and expenses of continued litigation; (6) the released party's ability to pay; (7) any evidence of bad faith, collusion, or fraud; (8) the extent of the releasing party's investigation and preparation; and (9) the interests of the parties not being released." *Mut. of Enumclaw*, 165 Wn.2d at 264.

are not vital to Sussman Shank's case. *See Amlani,* 169 F.3d at 1195-96. Thus the *Hearn* test shows that Dana did not waive the attorney-client privilege.

¶40  In ruling that Dana waived the attorney-client privilege, the trial court relied exclusively on its determination that the protected communications were *relevant* to Dana's damages and Sussman Shank's defense. But relevance is not the test for waiver of attorney-client privilege. Accordingly, we hold that the trial court abused its discretion and we vacate all four of the discovery orders.[15] *See Dix,* 160 Wn.2d at 833.

## II. DISQUALIFICATION

¶41 Dana next argues that the trial court abused its discretion by disqualifying the entire Cushman Law Offices because Cushman attorneys were likely to testify. We agree.

¶42 Because Dana did not waive the attorney-client privilege with respect to Cushman, there are no tenable grounds to disqualify the Cushman attorneys as lawyers and witnesses. RPC 3.7. We vacate the disqualification order.[16]

¶43 We vacate the four discovery orders and the disqualification order, and we remand to the trial court for further proceedings consistent with this opinion.

QUINN-BRINTNALL and PENOYAR, JJ., concur.

Reconsideration denied April 11, 2013.

Review denied at 178 Wn.2d 1006 (2013).

---

[15] Because the Cushman files have already been disclosed, the trial court should issue orders to minimize the damage done to Dana's attorney-client privilege. For instance it should, at a minimum, order return of the files and prohibit Sussman Shank and the Piper defendants from using any information contained in these files.

[16] Because we vacate the disqualification order, we need not address Dana's additional argument that it contains three unsupported findings of fact.