# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MONTE A. LEEN, Individually, and; TDE, INC., f/k/a The DESIGNERS EDGE, INC., a Washington Corporation, | ) ) ) ) ) | No. 75225-1-I |
| Appellants, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| BRIAN B. DEFOE, Individually and on Behalf of the Marital Community Comprised of BRIAN B. DEFOE and JANE DOE DEFOE, and; LANE POWELL, P.C., a Washington Professional Corporation, | ) ) ) ) ) ) ) | |
| | ) | UNPUBLISHED OPINION |
| Respondents. | ) ) | FILED: January 29, 2018 |

MANN, J. — Monte Leen and his company, TDE, Inc. (collectively Leen),

sued Brian Defoe and Lane Powell, P.C. (Lane Powell) for legal malpractice.

During discovery, Lane Powell requested documents and communications from

Byrnes Keller Cromwell (BKC), a law firm that represented Leen in litigation that

Leen alleges was caused by Lane Powell's malpractice. Leen asserted that

some of the requested documents were protected as work product and by

attorney-client privilege. Lane Powell moved to compel production. After hearing

oral argument, and reviewing the documents in camera, the trial court granted in part Lane Powell's motion to compel. Leen sought, and we granted, discretionary review of the trial court's order.

Leen contends that the trial court erred as a matter of law by concluding that he waived his attorney-client privilege and work-product privilege. We disagree. Leen waived his attorney-client privilege by suing Lane Powell for malpractice. In addition, the work-product doctrine does not protect the requested information. We affirm the trial court's order granting Lane Powell's motion to compel production.

## FACTS

### Underlying Litigation

Monte Leen was the controlling majority owner of The Designers Edge, Inc. (TDE), a manufacturer of lighting fixtures. In 2009, Coleman Cable, Inc. (Coleman) indicated interest in buying TDE's assets, including accounts receivable and related intellectual property rights. Negotiations intensified by late January 2011. On February 4, 2011, Leen hired Brian Defoe, an attorney at Lane Powell, to represent him in the sale of TDE's assets to Coleman. The negotiations resulted in an Asset Purchase Agreement (APA) between TDE and Coleman. The APA was designed to transfer TDE's assets as listed in a balance sheet dated December 31, 2010. But because the APA was negotiated in the first quarter of 2011, it contained a purchase price adjustment mechanism that adjusted the final purchase price based on a final accounting of TDE's assets.

Clark Nuber, an accounting firm that TDE retained before the sale occurred, provided accounting support for TDE and the sale.

The sale closed on April 1, 2011. After closing, Coleman requested that the sale price be adjusted downward by $300,000, the difference between the balance sheet dated December 31, 2010, and the final accounting. Leen objected to the reduction, but after arbitration the purchase price was adjusted downward by $833,000. Lane Powell represented Leen during this time.

At this same time, Coleman also sought indemnification from TDE under the APA related to a number of new and ongoing lawsuits and claims—including one with Home Depot, USA, Inc. (Home Depot).[1] Leen sought representation from Lane Powell to defend against Home Depot's claims. On June 27, 2012, Lane Powell notified Leen that it could not represent Leen in the indemnification matters because the firm had a pre-existing attorney-client relationship with Home Depot. Consequently, Leen retained BKC to represent him in the third-party indemnification litigation and Lane Powell withdrew.

BKC continued to represent TDE and Leen on the remaining APA issues, including the third-party indemnification litigation. With BKC's legal counsel, and ongoing support from Clark Nuber, Leen eventually resolved the third-party claims with a $295,000 settlement payment.

---

[1] The APA required Leen and TDE to indemnify, defend, and hold Coleman harmless from legal action. On March 9, 2012, Home Depot, a codefendant in an ongoing lawsuit against TDE, sought indemnification against Coleman for the amount that Home Depot contributed to the lawsuit's settlement. In response to Home Depot's demand, Coleman demanded that TDE indemnify it against the third-party claims.

On October 10, 2014, Leen filed the underlying litigation against Defoe and Lane Powell for malpractice and breach of fiduciary duty. Leen's complaint alleges that Lane Powell failed to review the APA and that the APA should have limited his personal liabilities to $500,000. Leen also alleges that Lane Powell's malpractice caused Leen to become (1) "personally exposed to liability and drawn into litigation with third parties for personal injuries arising from product liability claims" that he claims should have been limited by the APA and (2) "unnecessarily drawn into litigation that involved Home Depot."

Leen claims $1,866,000 in damages due to Lane Powell's misconduct. This includes (1) $291,000 in attorney fees paid to BKC for its representation of Leen after Lane Powell identified the conflict with in the litigation filed by Coleman to indemnify it against claims by Home Depot, (2) $295,000 for a settlement that released Leen from Coleman's lawsuit seeking indemnification, and (3) $333,000 paid to Clark Nuber for accounting fees for work relative to the APA and ensuing litigation.

### Discovery Dispute

During discovery, Lane Powell requested information concerning Leen's communications with Clark Nuber and BKC after it took over representation of Leen in post-APA litigation. Leen asserted privilege over several responsive documents.[2] Leen produced some documents, but withheld documents it deemed privileged. While Leen produced a privilege log, the parties disagree as

---

[2] A legal memorandum prepared by BKC that analyzes Coleman's claims against Leen appears to be at the heart of the dispute. See Leen's Motion for Discretionary Review at 6 n.2. Coincidentally, this memorandum was inadvertently produced and then returned during discovery. Report of Proceedings (RP) (May 6, 2016) at 21-22.

to whether the log is adequate. Lane Powell offered to enter into a stipulated protective order covering the documents that Leen claims as privileged, but negotiations failed.

On March 30, 2016, Lane Powell moved to compel production of the withheld BKC and Clark Nuber documents. Leen objected on several grounds. The trial court held oral argument to consider the dispute under Pappas v. Halloway, 114 Wn.2d 198, 787 P.2d 30 (1990), Dana v. Piper, 173 Wn. App. 761, 295 P.3d 305 (2013), and the equitable rule of indemnity referred to as the ABC Rule. After reviewing the withheld documents in camera, the trial court issued a written order granting the motion in part. After analyzing the parties' claims, the trial court concluded:

> By claiming damages fees and costs charged by BKC and Clark Nuber in the subsequent litigation, Plaintiffs have placed at issue the reasons for that litigation, i.e., whether the litigation can be attributed to circumstances other than the alleged malpractice. Therefore in addition to BKC files that relate to their attorney fees, Defendants are also entitled to any BKC documents, including legal analysis, that broadly relate to the ABC Rule. The court will not order the disclosure of the entire BKC and Clark Nuber files. Certain documents may not be relevant to the issues identified above. If Plaintiffs withhold such documents, however, they must provide a privilege log that is sufficiently detailed to demonstrate that the withhold documents are outside the scope of the court's order.[3]

We granted Leen's motion for discretionary, interlocutory appeal.

## ANALYSIS

Generally we review a trial court's discovery rulings for abuse of discretion. Dana, 173 Wn. App. at 769. "A court abuses its discretion when its

___

[3] Clerk's Papers (CP) at 405-06.

-5-

decision is manifestly unreasonable or based on untenable grounds. A court necessarily abuses its discretion when basing its decision on an erroneous view of the law or applying an incorrect legal analysis." Dana, 173 Wn. App. at 769. We review questions of law, including the trial court's interpretation of the privilege statute de novo. Cedell v. Farmers Ins. Co. of Wash, 157 Wn. App. 267, 272, 237 P.3d 309 (2010), aff'd in part, rev'd in part, 176 Wn.2d 686, 295 P.3d 239 (2013).

*Attorney-client privilege*

Leen argues that the trial court erred as a matter of law by concluding that Leen waived his attorney-client privilege as to his communications with BKC. We disagree.

Attorney-client communications are privileged: an attorney "shall not, without the consent of his or her client, be examined as to any communication made by the client to him or her, or his or her advice given thereon in the course of professional employment." RCW 5.60.060(2)(a). "The privilege is imperative to preserve the sanctity of communications between clients and attorneys." Dietz v. Doe, 131 Wn.2d 835, 851, 935 P.2d 611 (1997). A party is entitled to discovery regarding any nonprivileged matter. CR 26(b)(1).

The attorney-client privilege can be waived. "By suing his attorney for malpractice, a client impliedly waives the privilege with respect to the defendant attorney and with respect to all other attorneys who represented the client in the underlying matter of the malpractice suit." Dana, 173 Wn. App. at 770 (citing Pappas, 114 Wn.2d at 206). "Where it would be manifest injustice to allow the

client to take advantage of the rule of privileges to the prejudice of the attorney, or when it would be carried to the extent of depriving the attorney of the means of obtaining or defending his own rights, this court has ruled the privilege is waived." Pappas, 114 Wn.2d at 204.

Leen argues that the trial court misapplied Pappas, the Hearn test, Dana, and a rule of equitable indemnity known as the ABC Rule. We address each in turn.

A.    Pappas v. Holloway

In Pappas, the Holloways were sued in Lewis and Whatcom Counties for selling diseased cattle. The Holloways hired Larry Fagerness to represent them in Lewis County and John Pappas to represent them in Whatcom County. After the lawsuits were consolidated in Whatcom County, Pappas took over representation of the entire case. Later, the Holloways hired another attorney, James Thompson, to represent them jointly with Pappas. One month before trial, however, Pappas withdrew. The Holloways then hired Douglas Shepard to help Thompson try the case. At trial, the Holloways lost, suffering an adverse judgment of $2.9 million. Pappas, 114 Wn.2d at 200.

Pappas then sued the Holloways to recover his attorney fees. The Holloways counterclaimed against Pappas for malpractice. Pappas, 114 Wn.2d at 200-01. Pappas responded by bringing third-party malpractice claims against all of the attorneys who represented the Holloways in the litigation over the diseased cattle. During discovery, Pappas filed a motion to compel the third-party defendant attorneys to produce documents relating to the litigation.

Pappas, 114 Wn.2d at 202. The trial court granted Pappas's motion. In ordering production, the trial court concluded that the Holloways waived the attorney-client privilege as to all attorneys who participated in the litigation when they sued Pappas for malpractice. Pappas, 114 Wn.2d at 202. Our Supreme Court affirmed, holding that the Holloways' malpractice action against Pappas, their former attorney, constituted an implied waiver of attorney-client privilege as to all attorneys who defended the Holloways in the underlying litigation. Pappas, 114 Wn.2d at 202, 205-06.

In concluding that the Holloways waived attorney-client privilege, the court reviewed out-of-state opinions, including Jakobleff v. Cerrato, Sweeney & Cohn, 97 A.D.2d 834, 468 N.Y.S.2d 895 (1983). Pappas, 114 Wn.2d at 205-06. In Jakobleff, the plaintiff sued her former attorneys for malpractice in securing a divorce settlement. The defendants impleaded the attorney who represented the plaintiff in the malpractice lawsuit because they alleged that the attorney failed to mitigate damages by pursuing remedial actions against the plaintiff's former husband. To prove this defense, the defendants sought communications between the plaintiff and her malpractice attorney. Jakobleff, 97 A.D.2d at 835. The Jakobleff court held that the attorney-client privilege protected the sought-after communications and that the privilege had not been waived: "[I]t simply cannot be said that plaintiff has placed her privileged communications with her present attorney in issue, or that discovery of such communications is required to enable defendants to assert a defense or to prosecute their third-party claim." Jakobleff, 97 A.D.2d at 835.

Our Supreme Court distinguished the situation in Pappas by pointing out that unlike in Jakobleff, Pappas did not seek any documents or communications from the malpractice attorney and did not seek any documents or communications that postdated the Holloways' damages:

> The distinction between the two cases rests largely on the fact the plaintiff's present attorney in Jakobleff did not participate in the underlying litigation which gave rise to the malpractice claim against the defendants. Nor did the defendants' third-party complaint against plaintiff's present attorney allege involvement in securing a proper settlement in the underlying divorce proceedings. Instead, plaintiff's present attorney was impleaded on the damage issue only. Consequently, any communications between this attorney and plaintiff, which would have taken place after the underlying divorce became final, would have no effect upon the malpractice issue raised in plaintiff's complaint. This is significantly different from the case before us wherein Pappas has alleged the same cause of action against the third-party defendants as the Holloways have alleged against him. Communications between the Holloways and third-party defendants concerning the [cattle] litigation are relevant not only to the issue of damages and contribution, but are also relevant to the malpractice issue raised by the Holloways in their counterclaim.

Pappas, 114 Wn.2d at 206.

Here, Pappas is directly on point. Lane Powell represented Leen in negotiating the APA and in a postclosing dispute regarding the purchase price's adjustment. On June 19, 2012, before Lane Powell withdrew, Coleman demanded that TDE indemnify it with respect to losses caused by lawsuits against Coleman. Then, on June 27, 2012, Lane Powell notified Leen that Home Depot, one of Lane Powell's clients, also sought indemnification from Coleman. Lane Powell withdrew from representing Leen, and on July 19, 2012, Coleman sued Leen and TDE. Later, Leen sued Lane Powell for malpractice, alleging that

"[a]s a direct result of [Lane Powell's] erroneous advice, [Leen and TDE] were unnecessarily drawn into arbitration and litigation with Coleman Cable over disputes regarding the Agreement's terms," and that "[Leen and TDE] were unnecessarily drawn into litigation that involved Home Depot." After Leen sued Lane Powell for malpractice, Lane Powell, just like Pappas, sought information exchanged with Leen's attorneys and accountants up through the settlements that Leen claimed as damages in his malpractice lawsuit against Lane Powell. Like Pappas, and unlike the defendant attorneys in Jakobleff, Lane Powell does not seek access to any information exchanged between Leen and his current malpractice counsel, the Waid Law Office. Jakobleff, 97 A.D.2d at 835. As in Pappas, here it would be "manifest injustice" to allow Leen to "take advantage of the rule of privileges to the prejudice of" Lane Powell. Pappas, 114 Wn.2d at 204 (citing Stern v. Daniel, 47 Wash. 96, 98, 91 P. 552 (1907)).

Leen contends that because BKC played no role in negotiating the APA—the underlying transaction that gives rise to the legal malpractice claim—no waiver occurred. But Leen reads Pappas too narrowly by focusing on timing alone: "Did the [privileged] communications occur before the underlying litigation was complete[?]"[4] But Pappas did not focus solely on timing:

> Where it would be manifest injustice to allow the client to take advantage of the rule of privileges to the prejudice of the attorney, or when it would be carried to the extent of depriving the attorney of the means of obtaining or defending his own rights, this court has ruled the privilege is waived.

Pappas, 114 Wn.2d at 204 (citing Stern, 47 Wash. at 98).

---

[4] Reply Br. of Appellant at 9 (internal quotations omitted).

Here it would be manifestly unjust to allow Leen to sue Lane Powell for damages but disallow Lane Powell to discover the cause or scope of almost $1 million in damages.

B.   Hearn test

To determine whether the attorney-client privilege was waived the Pappas court applied the three-part test created in Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash. 1975).  According to the Hearn test, the attorney client privilege is waived where "(1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." Pappas, 114 Wn.2d at 207 (citing Hearn, 68 F.R.D. at 581).

Leen argues that the trial court misapplied the Hearn test.  He contends that the second and third elements are not met because Leen did not put his communications with BKC at issue, and asserting privilege does not deny vital information to Lane.  We disagree.

First, Leen sued Lane Powell for malpractice, an affirmative act.  Second, Leen "put the protected information at issue by making it relevant to the case." Pappas, 114 Wn.2d at 207.  Leen's complaint alleges that Lane Powell's malpractice caused him to be "unnecessarily drawn into arbitration and litigation with Coleman Cable over disputes regarding the Agreement's terms."  And third,

allowing Leen to block Lane Powell's request for information relating to the post-APA litigation would deny Lane Powell an adequate defense.

In order for Leen to prove that Lane Powell committed malpractice, he must show that (1) an attorney-client relationship existed, (2) Lane Powell had a duty, (3) it breached that duty, and (4) the breach caused an injury to Leen. Halvorsen v. Ferguson, 46 Wn. App. 708, 711, 735 P.2d 675 (1986). In order to determine whether Lane Powell's breach caused Leen's injury (his attorney fees and accountant's fees), Lane Powell must be able to examine decisions made during the post-APA litigation. And in order to examine those decisions, Lane Powell must have access to communications between Leen and BKC and Clark Nuber. The Hearn test requires disclosure here.[5]

## C.   Dana v. Piper

Leen also argues that Dana v. Piper supports the conclusion that he did not waive his attorney-client privilege with respect to his communications with BKC.

In Dana v. Piper, Division Two of this court held that Troy Dana did not waive his attorney-client privilege with respect to attorneys who represented him in a suit for breach of a stock-purchase agreement by later suing Sussman Shank, LLP, the law firm that drafted the stock-purchase agreement, for malpractice. Dana, 173 Wn. App. at 773-75. Leen contends that Dana stands

---

[5] This is consistent with our decision in Bellevue Farm Owners Association v. Stevens, 198 Wn. App. 464, 394 P.3d 1018 (2017). In that case we applied the Hearn test to hold that Stevens impliedly waived his attorney-client privilege and work product for attorney fees and cost-billing records by claiming attorney fees as his only damages for the tort of abuse of process. 198 Wn. App. at 482.

for the rule that in a malpractice lawsuit on a transaction, litigation occurring after the transaction is complete does not, as a matter of law, waive any privileges. But because Dana's holding is based on specific facts that do not exist here, Dana supports the trial court's order.

In Dana, Dana owned all of the shares in a business, Hodges, Gilliam & Dana Investment Real Estate, Inc. (Hodges). Dana hired an attorney at Sussman Shank to review a series of documents executing the sale of Hodges to CMN, Inc. No other attorneys other than Sussman Shank advised Dana on the sale. Dana, 173 Wn. App. 763-64. After the sale closed, Dana hired the Cushman Law Offices, which was not involved in the sale, to sue CMN for breaching a stock-purchase agreement. Later, Dana hired another law firm, Stokes Lawrence, P.S., to negotiate a settlement as cocounsel with Cushman. Dana settled his claims with CMN for $258,000.

After he settled, Dana, with Cushman as counsel, sued Sussman Shank for malpractice, breach of fiduciary duty, fraud, and a violation of the Consumer Protection Act. Dana's complaint against Sussman Shank, however, did not reference Dana's earlier lawsuit against, or settlement with, CMN. Dana, 173 Wn. App. 764-65. Sussman Shank responded by raising an affirmative defense, that Dana "sought and received advice of other advisors with respect to the transaction at issue. To the extent there is any fault by any advisor to [Dana] with respect to the underlying transaction, that fault was the responsibility of others, not [Sussman Shank]." Dana, 173 Wn. App. 765.

During discovery, Sussman Shank requested "the complete file of any and all attorneys or law firms who represented [Dana] in the litigation entitled Dana v. CMN, Inc." Dana, 173 Wn. App. 765. Dana objected on the ground of attorney-client privilege, and Sussman Shank moved to compel discovery. After reviewing Cushman's case file in camera the trial court granted Sussman Shank's motion to compel discovery, ruling that Dana waived the attorney-client privilege with respect to the Cushman attorneys involved in the Dana v. CMN, Inc. lawsuit. Dana, 173 Wn. App. 766.

The Court of Appeals vacated the trial court's order. In concluding that Dana did not waive his privilege, the Dana court focused on Pappas and the Hearn test. The court read Pappas to hold that "the attorney-client privilege is not waived where the protected communications occurred only after the end of the underlying matter giving rise to the malpractice claim." Dana, 173 Wn. App. at 772. Applying Pappas, the Dana court found that since Dana communicated with Cushman after Sussman Shank's alleged malpractice was complete, the communications had no effect on Sussman Shank's alleged malpractice in representing Dana. Dana, 173 Wn. App. at 772.

The Dana court also applied the Hearn test, determining that Sussman Shank did not meet the second and third parts. Sussman Shank failed the second part because Dana did not put his protected communications at issue: "Dana's complaint does not mention his settlement with CMN or his communications with Cushman. The complaint involves only Sussman Shank's performance in facilitating Dana's sale of his company to CMN." Dana, 173 Wn.

-14-

App. at 775. Sussman Shank failed the third part because it failed to show that the Cushman case file was vital to its case. Dana, 173 Wn. App. at 776.

Here, the trial court correctly concluded that Dana's facts are distinguishable.[6] Leen, unlike Dana, put his communications with BKC at issue by alleging in his complaint that Lane Powell's malpractice caused him to be "unnecessarily drawn into arbitration and litigation with Coleman Cable over disputes regarding the Agreement's terms" and to be "personally exposed to liability and drawn into litigation with third parties for personal injuries arising from product liability claims." In contrast, Dana's complaint for malpractice against Sussman Shank did not reference Dana's earlier lawsuit and settlement with CMN for breaching the stock-purchase agreement. Dana, 173 Wn. App. 764-65. Leen's complaint for malpractice against Lane Powell put the post-transaction litigation center stage: Leen alleges that Lane Powell caused $1.8 million in damages, including $291,000 in attorney fees for BKC, $333,000 in accounting fees for Clark Nuber, and $295,000 for the Coleman Cable litigation. We agree with the trial court that "[u]nlike Dana, Plaintiffs' malpractice allegations squarely place at issue the subsequent litigation in which BKC and Clark Nuber provided representation and assistance."[7]

D.    ABC Rule

The trial court also examined Leen's withholding of discovery under the ABC rule. As the trial court recognized, "[a]mong the $1.8 million in damages

_____

[6] CP at 404-05.
[7] CP at 405.

-15-

Plaintiffs attribute to Defendant's alleged malpractice are $291,000 in attorneys fees paid to BKC and $333,000 in accounting fees for work performed by Clark Nuber." Lane Powell contends, and claims it will argue at trial, that Leen cannot recover attorney fees paid to BKC because the rule of equitable indemnity, or ABC Rule, which allows attorney fees to be awarded as consequential damages, is not applicable.

In general, Washington courts follow the "American Rule"—"even as to a prevailing party, attorney fees are not available as costs or damages absent a contract, statute, or recognized ground in equity." LK Operating, LLC v. Collection Group, LLC, 181 Wn.2d 117, 123, 330 P.3d 190 (2014). The ABC Rule is an equitable rule, under which attorney fees may be compensable as consequential damages in certain situations. The ABC Rule has three elements:

> "(1) a wrongful act or omission by A . . . toward B . . . ; (2) such act or omission exposes or involves B . . . in litigation with C . . . ; and (3) C was not connected with the initial transaction or event . . . , viz., the wrongful act or omission of A toward B."

LK Operating, 181 Wn.2d at 123 (alternations in original) (internal quotations omitted). All three elements must be satisfied for the ABC Rule to apply. LK Operating, 181 Wn.2d at 123

Applying the ABC Rule, Washington courts have explained: "a party may not recover attorney fees or costs of litigation under the theory of equitable indemnity if, in addition to the wrongful act or omission of A, there are reasons why B became involved in litigation with C." Jain v. J.P. Morgan Securities, Inc., 142 Wn. App. 574, 587, 177 P.3d 117 (2008).

"The critical inquiry under the causation element of equitable indemnity is whether, apart from A's actions, B's own conduct caused it to be 'exposed' or 'involved' in litigation with C." Jain, 142 Wn. App. at 587. By seeking the legal fees paid to BKC as damages, Leen placed the cause of those damages at issue.

Applying the critical inquiry here, the inquiry becomes "whether, apart from A's [Lane Powell's] actions, B's [TDE and Leen's] own conduct caused it to be 'exposed' or 'involved' in litigation with C [Coleman Cable and third-parties]." Jain, 142 Wn. App. at 587. As the trial court correctly concluded, "[b]y claiming as damages fees and costs charged by BKC and Clark Nuber in the subsequent litigation, Plaintiffs have placed at issue the reasons for that litigation, i.e., whether the litigation can be attributed to circumstances other than the alleged malpractice."[8] The trial court did not err in compelling disclosure of BKC documents, "including legal analysis, that broadly relate to the ABC Rule."[9]

### Work-product doctrine

Leen argues next that the work-product doctrine protects BKC's opinion work product. CR 26(b) establishes the work-product doctrine. It creates immunity from discovery for "documents and tangible things" if the items were "prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative." CR 26(b)(4). It makes "no distinction between

---

[8] CP at 405.
[9] CP at 405-06.

-17-

attorney and nonattorney work product." Heidebrink v. Moriwaki, 104 Wn.2d 392, 396, 706 P.2d 212 (1985). The requesting party may obtain discovery only after showing "substantial need of the materials" and that the materials' "substantial equivalent" is not available through other means without "undue hardship." CR 26(b)(4).

Whether a party has shown substantial need is "vested in the sound discretion of the trial judge, who should look at the facts and circumstances of each case in arriving at an ultimate conclusion." Pappas, 114 Wn.2d at 210. "To justify disclosure, a party must show the importance of the information to the preparation of [the party's] case and the difficulty the party will face in obtaining substantially equivalent information from other sources if the production is denied. The clearest case for ordering production is when crucial information is in the exclusive control of the opposing party." Pappas, 114 Wn.2d at 210 (internal citations omitted).

The requesting party usually cannot recover "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." CR 26(b)(4). "An exception to this strict rule applies and discovery should be allowed only where the material sought is central to a party's claim or defense." Steel v. Olympia Early Learning Center, 195 Wn. App. 811, 834, 381 P.3d 111 (2016) (citing Pappas, 114 Wn.2d at 212-13).

Leen argues that the work-product doctrine protects the information from disclosure. He argues that Lane Powell did not show undue hardship and faults

the trial court for not making any finding that the mental impressions of the BKC attorneys and Clark Nuber accountants are an integral part of the malpractice issue.

Here, Lane Powell may discover the documents produced by BKC. Because Leen is in exclusive control of the information, Lane Powell has a substantial need for the materials requested. And since Lane Powell cannot investigate the decisions made during the course of the post-APA litigation through another source, there is no substantial equivalent to the materials available. "The nature of a malpractice claim necessitates inquiry into the actions taken during the course of the litigation in question." Pappas, 114 Wn.2d at 211. Lane Powell is entitled to investigate the actions taken during Leen's post-APA litigation with BKC.

Leen counters that Lane Powell already possesses every document from which BKC attorneys made their legal conclusions. This, he argues, negates the need to disclose documents that contain legal conclusions. But this argument flies in the face of Pappas's rule that "where the material sought to be discovered is central to a party's claim or defense, an exception to the strict rule created by CR 26(b)(4) should apply and discovery should be allowed." Pappas, 114 Wn.2d at 212 (emphasis added). Here, the decisions made during litigation are central to Lane Powell's defense—that Leen cannot recover damages because he cannot show that Lane Powell's action caused Leen's damages.

Leen also counters that the trial court failed to include factual findings that supported its explanation of why the work-product doctrine was waived. This

argument is somewhat persuasive given that the court's order does not mention the work-product doctrine. But given that the trial court heard oral argument and reviewed the privileged information in camera before ruling, the context surrounding the order strongly suggests that the court considered whether the work-product doctrine was waived. For example, the court ordered that "Defendants are also entitled to any BKC documents, including legal analysis, that broadly relate to the ABC Rule."[10] Accordingly, we reject Leen's argument.

Ultimately, like in Pappas, BKC's attorney's mental impressions regarding post-APA litigation are directly in issue, both to Leen's claim (causation) and Lane Powell's defense (ABC Rule). Accordingly, we affirm the trial court's order granting in part Lane Powell's motion to compel production.

Affirmed.

WE CONCUR:

---

[10] CP at 405-06 (emphasis added).

-20-