**WALTERS WHOLESALE ELECTRIC COMPANY, Plaintiff,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a California Corporation, and Does 1 through 20, Defendants.**

No. CV 06–4290–RSWL (JWJx).

United States District Court,
C.D. California,
Western Division.

Jan. 31, 2008.

Steven C. Shuman, Walter J. Lack, Engstrom Lipscomb & Lack, Los Angeles, CA, for Plaintiff.

John T. Williams, Joseph A. Hinkhouse, P. Russell Perdew, Scott R. Ostericher, Locke Lord Bissell and Liddell, Chicago, IL, Patricia Arias Musitano, Locke Lord Bissell and Liddell, Los Angeles, CA, for Defendants.

## ORDER GRANTING IN PART DEFENDANT'S MOTION TO COMPEL

JEFFREY W. JOHNSON, United States Magistrate Judge.

The court conducted a hearing in this discovery matter on November 8, 2007. After considering the pleadings and the arguments of counsel, the court grants in part the motion to compel brought by defendant National Union Fire Insurance Company of Pittsburgh, PA.[1] Inherent in the court's ruling is a finding that by virtue of the claims asserted by plaintiff Walters Wholesale Electric Company ("Walters") in this action, Walters has waived the attorney-client privilege which it asserted as its justification for non-disclosure.

---

1. At the time of the November 8, 2007 hearing, the court issued a tentative ruling, but advised the parties that it would take the arguments and briefs of the parties under submission and subsequently issue a final ruling. Based upon its further review, the court has determined not to

## I. THE UNDERLYING EVENTS, CLAIMS, AND SETTLEMENTS

This matter arises out of an April 7, 2003 chain reaction automobile accident triggered by a Walters employee. John Cooley was killed in the accident; Jose Castro suffered partial paraplegia. In the ensuing civil actions on behalf of Cooley's wife and others and Castro and others, Zurich American Insurance Group ("Zurich") assumed primary defense of Walters pursuant to a $1,000,000 policy. National Union assumed the role of excess carrier pursuant to an $8,000,000 Commercial Umbrella Policy. Zurich retained Robert Kaufman to represent Walters. Separately, Walters retained attorney Montgomery Cole to advise it about issues pertaining to exposure in excess of the insurance coverage.

Over the course of several months, Walters, the Cooley claimants, the Castro claimants, Zurich, and National Union engaged in joint mediation. Before any settlement had been achieved, Zurich tendered its coverage limit to National Union and withdrew from the process. National Union then replaced Mr. Kaufman with its own appointed counsel. Believing that the Cooley claim should settle for $5,000,000, National Union elected to wait for the Cooley claimants to come down from their most recent offer of $6,400,000 and, in turn, directed Walters to prepare for the approaching trial. On May 3, 2004, one week before the scheduled trial, Walters settled the Cooley claim for $5,200,000. Walters contributed $200,000 toward the resolution and National Union paid $5,000,000.

Further, after a period of discovery, negotiations with the Castro claimants resumed.[2] In September 2004, National Union tendered in settlement its remaining policy limits— $3,900,000. When Castro declined this offer and demanded a sum above the remaining policy limits, Walters contributed $150,000 over National Union's policy limit offer. Claimant Castro accepted the offer.

adopt the tentative ruling articulated at the November 8, 2007 hearing.

2. In March 2004, the Castro claimants had initially asked for $5,000,000; shortly thereafter, National Union countered at $2,000,000.

## II. THE RELEVANT ALLEGATIONS OF THE COMPLAINT

In the instant litigation, Walters, as part of its first claim in the Complaint for Breach of Contract (seeking damages for breach of the implied covenant of good faith), asserts the following:

12. In order for Walters to assure that it did not face a risk of a verdict and judgement in the Cooley case in excess of the National Union policy limit, or a verdict and judgment so high that there would be insufficient remaining limits on the National Union policy to resolve the Castro claim, Walters had to agree to contribute money from its own funds to the Cooley settlement. Despite having policy limits adequate to resolve the Cooley claim entirely with insurance proceeds, Walters had to agree to contribute money from its own funds to the Cooley settlement. Despite having policy limits adequate to resolve the Cooley claim entirely with insurance proceeds, Walters had to contribute $200,000.

. . . .

14. After the Cooley settlement, approximately $4,000,000 remained of the National Union policy limit. Castro offered to settle for the remaining policy limits, but National Union refused to pay that sum when it had the chance. Instead, it offered $2,400,000 and engaged in further litigation activity. Castro then incurred $47,000 in expert fees and additional attorney fees over the ensuing four months. Thereafter, National Union offered a greater sum, but still less than the remaining policy limit, payable over a period of months so it could continue earning interest on a portion of the money. Subsequently, it offered the remaining policy limit, but again insisted on keeping half the money for 90 days so it could continue earning interest. Ultimately, National Union offered the policy limit, but by that time Castro refused to accept it. Castro insisted on some additional compensation for the lost interest on the money that should have been paid much earlier. *National Union blamed Castro's insistence on additional sums on its insured, claiming that the insured fueled an expectation of additional sums by voluntarily contributing to the Cooley settlement.*

15. National Union refused to pay the relatively modest additional amount required to compensate for its own refusal to settle the claim within policy limits when it had the chance do so. National Union also refused to assume the risk of an excess judgment that its own actions had created. *Once again, Walters had to add funds of its own to the settlement offer by National Union to avoid running the risk that a verdict at trial would far exceed the limit of its insurance and financially ruin Walters.* Walters paid $150,000 toward the Castro settlement on account of National Union's earlier refusal to settle within policy limits.

16. By refusing to accept a reasonable settlement offer in the Cooley case and by refusing to timely accept a reasonable settlement offer within policy limits in the Castro case, National Union forced Walters *to participate with a monetary contribution in both settlements beyond the payments made by National Union itself,* simply to protect against the possibility of a judgment in excess of policy limits. National Union thereby gave its own interests greater consideration than those of its insured, *exposing* its insured to a large judgment in order to try to preserve a small portion of its own policy limits. National Union thus deprived the insured of the peace of mind and protection that is the very purpose of insurance. National Union further intended to avoid its own responsibility for *forcing* Walters into a position of having to make those payments by characterizing Walters's payments as "voluntary".

Complaint, pp. 3–5 (emphasis added).

## III. THE DISPUTE

■ Essentially, in this discovery dispute, National Union seeks production of documents in Walters's possession or control regarding Walters's "actual evaluation of the claims and its decision to contribute to the settlements." (Joint Stipulation, p. 15). In particular, National Union seeks production of "communications between Walters and

Robert Kaufman, its defense counsel appointed by Zurich, and between Walters and Montgomery Cole, Walters ['s] separately retained counsel on issues resulting from the exposure in excess of the insurance coverage." (Joint Stipulation, p. 7).

## IV. ANALYSIS

Walters has argued forcefully that "[t]his lawsuit is not about whether Walters acted reasonably in settling the underlying claims to avoid excess exposure; it is about whether National Union rejected reasonable settlement demands within policy limits that would have prevented the excess exposure to its insured." This argument is flawed. An indispensable element in the analysis of the reasonableness of National Union's rejection of settlement demands is what it knew at the time it made decisions to reject the settlements that Walters contends should have been accepted. However, an equally essential element of this reasonableness analysis is whether Walters's decision to settle the Cooley and Castro claims when it did was "forced" by some discerned or perceived deterioration in its litigative/settlement positions in the respective cases. Without such analysis, a trier of fact would be without basis to test the following assertions which this court finds are inherent in Walters's claim: 1) at the time National Union ostensibly failed to settle the respective claims within the coverage limits, National Union knew or should have known that the opportunity for similarly favorable settlement was diminishing; 2) when Walters effectively closed the time window for settlement by agreeing to terms that required its contribution, there were factors or circumstances which reasonably indicated that Walters's opportunity to effect a more favorable settlement (within coverage limits) had passed; and 3) National Union knew, should have known, or reasonably should have foreseen these factors or circumstances.

Thus, this court finds that by effectively placing at issue its decision—voluntary or not—to contribute to settlements with Cooley and Castro, Walters necessarily placed at issue the information it possessed leading up to and at the time of settlement. In *Chevron v. Pennzoil*, 974 F.2d 1156 (9th Cir.1992), the Ninth Circuit set forth the principle which

governs this court's ruling: "The privilege which protects attorney-client communications may not be used both as a *sword* and a *shield.* Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." *Id.* at 1162 (citations omitted; emphasis added). The Ninth Circuit has also delineated the test to determine when a party has waived the attorney-client privilege by bringing a particular claim:

> This Court employs a three-pronged test to determine whether a waiver has been effected. First, the court considers whether the party is asserting the "privilege as the result of some affirmative act, such as filing suit." *Home Indem. Co. v. Lane Powell Moss & Miller,* 43 F.3d 1322, 1326 (9th Cir.1995) (citing *Hearn v. Rhay,* 68 F.R.D. 574, 581 (E.D.Wash.1975)). Second, the court examines whether "through this affirmative act, the asserting party puts the privileged information at issue." *Id.* Finally, the court evaluates whether "allowing the privilege would deny the opposing party access to information vital to its defense." *Id.*

*United States v. Amlani,* 169 F.3d 1189, 1195 (9th Cir.1999). In defending Walters's claim, National Union is entitled to examine and test the bases for Walters's assertion that it faced exposure above coverage limits if the cases proceeded to trial and that National Union's action "forced" Walters to contribute to the settlements. Walters does not contend that it came to these conclusions independent of consultation with counsel. *See Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.,* 259 F.3d 1186, 1196 (9th Cir.2001) (where a party raises a claim which in fairness requires disclosure of a protected communication, the privilege may be implicitly waived). Thus, to the extent that Walters had communications with attorney Kaufman or attorney Cole which caused or contributed to Walters's formation of a view that National Union's actions were "exposing" Walters to a substantial judgment, this court finds that National Union must now be given access to those communications. Further, to the extent that Walters received counsel from attorney Kaufman or attorney Cole which contributed

to a contention that Walters was "forced" to settle when it did, National Union must be afforded an opportunity to test the reasonableness of that advice. *Cf. Rutgard v.Haynes,* 185 F.R.D. 596, 599–600 (S.D.Cal. 1999) (a plaintiff claiming damages for a settlement paid raises as an issue the possibility of contributory negligence by plaintiff's counsel in the settled case; "[p]laintiff has waived the attorney-client privilege between himself and [counsel who settled case] by putting 'in issue' the reasonableness of that settlement, and [settling counsel's] actions in defending [plaintiff] and recommending that settlement.").

■■■■ As for Walters's communications with attorney Kaufman, there is a second but related reason that Walters must disclose to National Union its communications with Kaufman. While there is a paucity of Ninth Circuit or California authority on the common interest doctrine [3] in the context of the attorney-client privilege, the California Court of Appeal has opined as follows:

The underlying basis for the rule which permits the insured to obtain redress for a bad faith refusal of the insurer to settle within the policy limits is that the insurer may not place its own interests ahead of its insured and from its position of certainty of the limits on its own exposure "gamble" unreasonably with the insured's unlimited exposure for the excess.

To permit the insurer to use the attorney-client privilege to shield from its insured, communications which relate to the insured, communications which relate to the insurer's decision concerning settlement would be to place the insured in a secondary rather than a primary position in his relationship with the attorney, seriously eroding the insured's ability to establish that the insurer had failed in its duty to him.

While no California case appears to have dealt directly with the issue, courts in other jurisdictions have done so and opted for the rule which we have adopted here.

It must be observed that the position which we here take *"cuts two ways."* If in the course of the relationship the attorney and the insured discuss the matter of set-

tlement and ramifications thereof, those communications would not be privileged in any action between the insured and the insurer.

*Glacier General Assurance Company v. The Superior Court of Los Angeles County, et al.,* 95 Cal.App.3d 836, 841–42, 157 Cal.Rptr. 435 (1979) (citations omitted; emphasis added). In the context of a trilateral relationship among a primary insurance carrier, an excess insurance carrier, and an insured, courts that have considered the relationship have found that a "primary carrier owes the same fiduciary obligation to the excess insurer which the primary insurer owes to its insured." *Zurich Insurance Co. v. State Farm Mutual Automobile Insurance Co.,* 137 A.D.2d 401, 402, 524 N.Y.S.2d 202 (1988). The logical extrapolation of these legal principles is that the fiduciary relationships between insurance carriers (whether they be excess or primary carriers), on one hand, and between insurance carriers and an insured, on the other hand, require that none of these parties assert the attorney-client privilege as a shield to issues of common interest which a court has determined must be disclosed to vindicate fairness. Thus, this court finds that Walters can not invoke the attorney-client privilege to avoid disclosing its communications with Mr. Kaufman (counsel for primary carrier Zurich) about the advisability of settlement and litigation exposure.

### V. CONCLUSION

**Accordingly, National Union's Motion to Compel is GRANTED IN PART. Production of communications responsive to National Union's request shall occur on or before February 15, 2008.** To the extent that plaintiff Walters contends that communications between it and attorney Kaufman or Cole, respectively, do not concern either a question of common interest (specifically with regard to communications with attorney Kaufman) *or* an issue that defendant National Union, in the interest of fairness, should be permitted to address by virtue of Walters's allegations, **on or before February 12, 2008** Walters may submit said documents (identifying those communications which

---

**3.** Codified in California Evidence Code § 962.

Walters believe do not fall within this court's order of disclosure) for *in camera* review. *See Bittaker v. Woodford,* 331 F.3d 715, 720–21 (9th Cir.2003) (court empowered to tailor production to "only those privileged materials without which the adverse party would be unfairly prejudiced"). The court would then determine whether said communications should be disclosed to defendant National Union.

As this court finds that the positions taken by plaintiff Walters in this discovery dispute are not frivolously asserted, the court finds no basis for imposition of sanctions against defendant Walters. **National Union's request for attorney's fees and costs related to its motion is DENIED.**