# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| LISA STEEL, individually and as GAL for J.T., a minor and DOUGLAS THOMPSON, and KRISTI BARBIERI, individually and as GAL for S.R.B., | No. 46301-6-II |
| Petitioners, | PUBLISHED OPINION |
| AMANDA MYRICK, individually and as Guardian Ad Litem for S.A., a minor, and NATALIE BOND, individually and as Guardian Ad Litem for A.K., a minor; ALICIA MENDOZA, individually and as Guardian Ad Litem for M.M., a minor, G.S.J., individually and as Guardian Ad Litem for J.J., a minor, | |
| Plaintiffs, | |
| v. | |
| PHILADELPHIA INDEMNITY INSURANCE CO., | |
| Respondent/Intervenor, | |
| OLYMPIA EARLY LEARNING CENTER; STEVE OLSEN, individually, and ROSE HORGDAHL, individually, | |
| Defendants. | |

JOHANSON, J. — Lisa Steel, Douglas Thompson, and Kristi Barbieri (collectively petitioners) appeal from a superior court discovery order that requires them to provide their

attorney-client privileged communications and work product to a third party insurer, Philadelphia Indemnity Insurance Company (Philadelphia). The superior court concluded that the petitioners impliedly waived their attorney-client communications and work product privilege when they sought a reasonableness determination of a covenant judgment settlement under RCW 4.22.060. The reasonableness hearing was necessary to enforce the covenant judgment settlement against Philadelphia. We hold that the implied waiver of attorney-client communications doctrine is not limited to legal malpractice actions. We further hold that implied waiver may occur in the covenant judgment settlement reasonableness determination context, but here, the superior court erred by applying an incorrect "relevancy" standard and by concluding that petitioners impliedly waived the attorney-client communication privilege and work product protection. We further conclude that under the proper standards, petitioners did not impliedly waive the attorney-client communication privilege nor was their work product discoverable. We reverse and remand to the superior court for proceedings consistent with this opinion.

FACTS

I. BACKGROUND AND SETTLEMENT

In 2011, an employee of Olympia Early Learning Center (OELC) was convicted of child rape and child molestation against two children at the day care.[1] Thereafter, sexual abuse victims who attended OELC and their parents (collectively plaintiffs) brought negligence claims against defendants OELC, OELC's executive director, and the program director (collectively the insureds). Philadelphia, OELC's liability insurer, retained defense counsel for the insureds.

---

[1] One of the children was a party in the negligence action; the other child was not. Neither child is a party to this appeal.

In August 2012, plaintiffs proposed a nearly $4 million settlement to Philadelphia and the insureds and stated that the potential verdicts could exceed $20 million.[2] In response, the insureds requested that Philadelphia protect them and accept the settlement. Philadelphia declined, claiming that their policy limit was $1 million and stating that they believed interpleader was the best method to resolve the claims against the insureds.

Although trial was set for October 16, as of September 5, defense counsel hired by Philadelphia had conducted little discovery. In late September, the insureds entered a covenant judgment settlement with plaintiffs. The covenant judgment settlement protected the insureds from individual liability and assigned the insureds' bad faith claims against Philadelphia to plaintiffs. As part of the covenant judgment settlement, the insureds stipulated to a $25 million judgment and signed judgments by confession admitting that the sexual abuse occurred, that the insureds were negligent, and that the plaintiffs suffered damage as a result.

## II. Procedure Regarding Scope of Discovery

In October 2012, Philadelphia moved to intervene to conduct "focused discovery" related to the reasonableness of the covenant judgment settlements the insureds agreed to and to participate in any reasonableness hearing. The trial court allowed Philadelphia's intervention and ordered plaintiffs to produce all discovery exchanged by the parties and all attorney work product related to the settlement. What followed was a series of motions by Philadelphia trying to expand the scope of discovery and by plaintiffs trying to limit the discovery of their attorney's work product and privileged communications. These motions and orders are the crux of this appeal.

---

[2] Plaintiffs previously demanded a $4 million settlement in December 2011 and again around July 2012.

In late October, plaintiffs produced nearly 200,000 pages of discovery, including all records given to them by the insured's defense attorney. In April 2013, the superior court ruled that plaintiffs' attorney's nonmental impression and nonopinion work product were discoverable because Philadelphia showed substantial need under CR 26(b)(4) in order to explore the reasonableness of the settlement under the *Glover* factors.[3] Plaintiffs produced to Philadelphia all of the nonprivileged documents generated, maintained, or obtained in this case including medical records, public records request responses, witness communications, expert communications, subpoenas, pleadings, and documents received in discovery. Plaintiffs also created a privilege log of e-mails that they believed were privileged as opinion and mental impression work product and attorney-client communications and moved to protect the e-mails.

Philadelphia then moved to compel plaintiffs to submit a more detailed privilege log and to release withheld attorney-client communications, arguing that privilege with respect to those materials had been "impliedly" waived. Plaintiffs submitted a more detailed privilege log and claimed that of the documents listed, 350 were protected under attorney-client privilege and 106 were protected as attorney work product administrative e-mails.

Philadelphia claimed that plaintiffs should disclose their e-mails because many of them were sent the day before or the same day that the settlements and the factual confessions were

---

[3] *Glover v. Tacoma General Hospital* set out nine factors to evaluate whether a settlement is reasonable under RCW 4.22.060: (1) the releasing party's damages, (2) the merits of the releasing party's liability theory, (3) the merits of the released party's defense theory, (4) the released party's relative fault, (5) the risks and expenses of continued litigation, (6) the released party's ability to pay, (7) any evidence of bad faith, collusion, or fraud, (8) the extent of the releasing party's investigation and preparation, and (9) the interests of the parties not being released. 98 Wn.2d 708, 717, 658 P.2d 1230 (1983), *abrogated on other grounds by Crown Controls, Inc. v. Smiley*, 110 Wn.2d 695, 756 P.2d 717 (1988).

signed. Philadelphia also sought to depose plaintiffs' counsel and to subpoena plaintiffs' counsel's notes, correspondence, and documents related to the case and particularly those reflecting the basis for the defendant insureds' judgments by confession and for the dollar amount of each settlement. Plaintiffs moved for a protective order quashing the subpoena and prohibiting their counsel from being deposed. Philadelphia deposed both OELC and OELC's executive director's personal defense attorneys.

### III. SPECIAL DISCOVERY MASTER RECOMMENDATION AND PROCEDURE

On August 27, the superior court appointed a special discovery master to review in camera the records plaintiffs designated as protected. The superior court ordered that the special discovery master review the records using the standard declared by the superior court in April 2013. Specifically, the special discovery master was directed to (1) review whether plaintiffs' documents contained privileged attorney work product opinions and mental impressions and/or attorney-client communications and then (2) even if he found a document to be privileged or protected, he could recommend discovery of the document based on the application of an "exception" to the privilege that if the record is "directly related" to one of the *Glover* factors, the privilege was waived "for the purposes of a reasonableness hearing." Clerk's Papers (CP) at 2827.

The special discovery master reviewed the materials in camera in three batches. The first batch included 106 records that plaintiffs' attorney had characterized as protected work product. The second batch included e-mails that plaintiffs' attorney characterized as privileged attorney-client communications. And the third batch included e-mails plaintiffs' attorney characterized as administrative attorney work product.

The special discovery master found that the first batch of records contained, in part, "photos or third party records" that he recommended be produced and some e-mails representing work product, but not opinion or mental impression work product, that he also recommended be produced. CP at 2899. The special discovery master's log of these materials shows that they were all attorney notes or intra-office e-mails between attorneys and staff at plaintiffs' attorney's firm.

The second batch of records contained 350 records that the special discovery master stated were mostly e-mail communications between and among plaintiffs' attorney, fellow attorneys, and firm staff and the plaintiff clients. The special discovery master found the majority of these correspondences were attorney-client communications and work product. The special discovery master recommended that the work product and attorney-client communications relevant to a reasonableness determination be produced.

The third batch contained all of the records created between September 17 and September 19 that Philadelphia advocated may be relevant to the reasonableness evaluation. The special discovery master found these e-mails to be protected interoffice administrative e-mails not relevant to the reasonableness evaluation. However, the special discovery master recommended production of a few attachments in this batch that were attorney work product but contained settlement documents different than the final settlement documents.

At the November 22, 2013 hearing to review the special discovery master's recommendations, Philadelphia argued that the only way it could determine how the settlement amounts were reached was to obtain plaintiffs' attorney's opinion and mental impression work product and to depose him. Philadelphia argued that this was so because when Philadelphia deposed the personal attorneys of OELC's president and director, they did not know that the

6

settlement amount was unilaterally set by plaintiffs' counsel and stated that the settlement was presented to them without negotiation. Philadelphia also stated that the insureds said in their depositions that although they had agreed to the settlement and the stipulated covenant judgment settlements, when they were presented with these documents to sign, the confessions were included at the last minute and were drafted by only plaintiffs' counsel.

During this hearing, the superior court acknowledged that plaintiffs had requested certification to appeal the special discovery master's determinations and had filed for a protective order regarding their work product and the deposition of plaintiffs' counsel. The superior court adopted the recommendations of the special discovery master and directed plaintiffs to produce all documents the special discovery master designated as unprotected based on this *Glover* "exception" to privilege. The superior court also denied plaintiffs' motion for a protective order to prevent Philadelphia from deposing plaintiffs' counsel and to quash Philadelphia's subpoena for the documents at issue. The superior court certified its entire order for appellate review under RAP 2.3(b)(4).

## IV. DISCRETIONARY REVIEW

We granted petitioners' request for discretionary review of the superior court's November 22 order but only as to the issue of "whether the attorney-client privilege or the attorney opinion or mental impression privilege is waived for the purpose of determining the reasonableness of a settlement." Ruling Granting Review In Part, at 2. We also granted petitioners' motion for an emergency stay stopping Philadelphia from subpoenaing documents and deposing plaintiffs' counsel.

## ANALYSIS

### I.  STANDARD OF REVIEW

We review waiver of attorney-client privilege and work product protection de novo.  *See Pappas v. Holloway*, 114 Wn.2d 198, 204-09, 787 P.2d 30 (1990).  We also review a trial court's discovery orders for abuse of discretion.  *Cedell v. Farmers Ins. Co. of Wash.*, 176 Wn.2d 686, 694, 295 P.3d 239 (2013).  A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds.  *Cedell*, 176 Wn.2d at 694.  When a trial court bases its decision on an erroneous view of the law or applies an incorrect legal analysis, it necessarily abuses its discretion. *Cedell*, 176 Wn.2d at 694.

### II.  RULES OF LAW FOR ATTORNEY-CLIENT COMMUNICATIONS PRIVILEGE

CR 26 allows discovery regarding any nonprivileged matter relevant in a pending action.  CR 26(b)(1).  RCW 5.60.060(2)(a) provides, "An attorney or counselor shall not, without the consent of his or her client, be examined as to any communication made by the client to him or her, or his or her advice given thereon in the course of professional employment."

Attorney-client privilege "applies to communications and advice between an attorney and client and extends to documents which contain a privileged communication." *Pappas*, 114 Wn.2d at 203.  The purpose of the privilege is to "'encourage free and open attorney-client communication by assuring the client that his [or her] communications will be neither directly nor indirectly disclosed to others.'" *Heidebrink v. Moriwaki*, 104 Wn.2d 392, 404, 706 P.2d 212 (1985) (quoting *State v. Chervenell*, 99 Wn.2d 309, 316, 662 P.2d 836 (1983)).  Attorney-client privilege is not, however, absolute and is limited to the purpose of allowing a client to communicate freely with an attorney without fear of compulsory discovery.  *See Pappas*, 114 Wn.2d at 203-04.

8

### III. IMPLIED WAIVER AND NONLEGAL MALPRACTICE CLAIMS[4]

Petitioners first argue that our legal precedent limits application of implied waiver of the attorney-client privilege to legal malpractice claims. We disagree.

Both parties rely primarily on *Pappas* and *Dana v. Piper* to support their contentions regarding the application of implied waiver outside the legal malpractice context. 173 Wn. App. 761, 295 P.3d 305 (2013). Petitioners argue that the *Pappas* and *Dana* courts included careful limiting language that does not support an extension of the implied waiver doctrine beyond legal malpractice claims. We disagree and instead conclude that the application of the implied waiver doctrine is not so limited.

First, importantly, *Hearn v. Rhay*, the case upon which *Pappas* and *Dana* based their application of the implied waiver test, is not a legal malpractice case. 68 F.R.D. 574 (E.D. Wash. 1975). The *Hearn* court found that defendants impliedly waived attorney-client privilege where they raised a qualified immunity affirmative defense to a civil rights violations claim that they acted in good faith and on advice of their counsel. 68 F.R.D. at 582-83. In other words, because

---

[4] Sections III and IV, *infra*, address application of the implied waiver doctrine regarding attorney-client communications—not protected attorney work product. Besides *Conoco Inc. v. Boh Brothers Construction Co.*, a Louisiana District Court case cited to by Philadelphia, neither party cites to any authority in which the doctrine was applied to work product. 191 F.R.D. 107, 117-19 (W.D. La. 1998). Philadelphia offers no argument why this Louisiana precedent should apply in Washington. And after applying the implied waiver test regarding privileged communications in *Pappas*, the Washington Supreme Court addressed whether requested work product documents were discoverable and applied a different standard: whether there was a showing of substantial need or justification for discovery. 114 Wn.2d at 209-10. Thus, because the parties have made no argument that the implied waiver doctrine applies to protected work product and Washington precedent indicates the doctrine does not apply in that regard, we decline to analyze this issue further. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

the defendants' affirmative defense placed the advice of their counsel at issue, they impliedly waived privilege. *Hearn*, 68 F.R.D. at 583. The fact that *Hearn* did not involve a legal malpractice claim strongly supports the conclusion that implied waiver may properly apply in cases other than legal malpractice.

Second, Philadelphia cites to *Home Indemnity Co. v. Lane Powell Moss & Miller* to show that the implied waiver doctrine can apply outside the context of legal malpractice claims. 43 F.3d 1322, 1327 (9th Cir. 1995). There, the Ninth Circuit applied the *Hearn* test to see if attorney-client privilege was waived—not to resolve a legal malpractice claim or defense, but to evaluate a stipulated judgment. *Home Indemnity Co.*, 43 F.3d at 1327. *Home Indemnity Co.* also involved underlying claims of legal malpractice, but specifically applied the *Hearn* test in the context of evaluating the reasonableness of a settlement. 43 F.3d at 1327. The *Home Indemnity Co.* court found the privilege was not waived after applying the *Hearn* test because there was sufficient objective evidence to evaluate the settlement's reasonableness without considering attorney-client communications. 43 F.3d at 1327.

Third, while both *Pappas* and *Dana* applied the implied waiver doctrine in the context of legal malpractice, neither case expressly limited application of the doctrine *solely* to legal malpractice cases. 114 Wn.2d at 206; 173 Wn. App. at 774. In both *Pappas* and *Dana*, the court used the implied waiver test and determined whether privilege was waived under the particular facts and in the context of the present case. 114 Wn.2d at 204, 206-09; 173 Wn. App. at 774-777. But those opinions did not state that implied waiver applies *only* in the context of attorney malpractice claims. We thus conclude that legal precedent does not expressly limit application of

the implied waiver doctrine to legal malpractice claims and that implied waiver should be considered on a case-by-case basis. *See Pappas*, 114 Wn.2d at 204, 206-09.

We acknowledge that a party who seeks to apply *Hearn*'s implied waiver test beyond the context of a legal malpractice case must bear a significant burden. That burden is evident in *Dana* and *Pappas* where the *Hearn* test was applied with words of caution. The *Dana* court observed that the *Pappas* court applied the *Hearn* test "without stating whether it governed all cases of implied waiver," which shows that both the *Pappas* and *Dana* courts were cognizant of limiting application of the test. 173 Wn. App. at 773. *Dana* states it does not interpret *Pappas* "to announce a sweeping implied waiver doctrine that would swallow the common law attorney-client privilege," and *Pappas* warns of the "danger of making illusory the attorney-client privilege in legal malpractice actions." 173 Wn. App. at 774; 114 Wn.2d at 206. Given these cautions, while acknowledging that our courts have not expressly limited application of the *Hearn* test to the legal malpractice context, a party seeking to apply it beyond that context must offer a fact-specific explanation for each element of the test to demonstrate why it should be applied, and courts must carefully apply the test to see if waiver has occurred in order to preserve the sanctity of attorney-client privilege.

IV. IMPLIED WAIVER IN THE CONTEXT OF SETTLEMENT REASONABLENESS HEARINGS

Petitioners next argue that even if implied waiver may apply outside the legal malpractice context, the discovery order should be vacated because implied waiver cannot apply to reasonableness hearings. Philadelphia argues that other jurisdictions have applied implied waiver in order to evaluate the reasonableness of a settlement and attorney-client communications can become necessary proper sources for that evaluation. We hold that implied waiver of the attorney-

11

client privilege may occur in the context of a settlement reasonableness hearing under certain limited circumstances. But not under the circumstances presented here.

Petitioners cite to *Dana* for the proposition that a reasonableness evaluation must be made using only objective evidence and, thus, implied waiver cannot apply because attorney-client communications are only ever subjective. We do not agree.

In *Dana*, Troy Dana hired a law firm, Sussman Shank LLP, regarding the sale of a stake in Dana's company to CMN Inc. 173 Wn. App. at 763-64. Dana retained another firm, the Cushman law firm, to later sue CMN, eventually settling that claim. *Dana*, 173 Wn. App. at 764. Dana filed a legal malpractice claim against Sussman Shank regarding the sale to CMN. *Dana*, 173 Wn. App. at 764. Sussman Shank alleged an affirmative defense that other advisors, including Cushman, gave Dana faulty advice in the CMN settlement, causing Dana damages that he sought to recover from Sussman Shank. *Dana*, 173 Wn. App. at 765-66. Sussman Shank moved to compel production of Cushman's attorney-client communications about the CMN litigation. *Dana*, 173 Wn. App. at 765-66.

Dana's complaint against Sussman Shank did not mention his settlement with CMN or communications with Cushman; rather, it involved only Sussman Shank's assistance in the sale of stock to CMN. *Dana*, 173 Wn. App. at 775. The *Dana* court concluded that Dana did not put his communications with Cushman regarding settlement at issue by suing Sussman Shank for malpractice regarding the sale of stock where Dana and Cushman never communicated about the sale until after it happened. 173 Wn. App. at 773, 776-77.

Thus, the *Dana* court stated, "Nine factors inform the trial court's determination of the settlement's objective reasonableness, and none of these factors depends on whether Dana or the

12

Cushman attorneys considered the settlement reasonable." 173 Wn. App. at 776. The *Dana* court concluded it should consider the strength of Dana's claims compared to the terms of the settlement to determine whether it was objectively reasonable, rather than ordering discovery of Dana's communications with Cushman. 173 Wn. App. at 773.

Contrary to petitioners' argument, the *Dana* court did not declare a sweeping rule that attorney-client communications *always* contain only subjective information that could never be placed at issue within the evaluation of a settlement's reasonableness. Rather, the *Dana* court's decision was narrowly tailored based on the facts presented there. 173 Wn. App. at 776-77.

Petitioners also cite to *Chomat v. Northern Insurance Co. of New York* for the proposition that attorney-client communications cannot be used to determine a settlement's reasonableness. 919 So. 2d 535, 538 (Fla. Dist. Ct. App. 2006). The *Chomat* court held that implied waiver did not apply and stated,

> The determination of whether a settlement is reasonable is made by a "reasonable person" standard. If counsel's advice were required to be disclosed, it would still not be binding on the insurance company. Instead, proof of reasonableness is *ordinarily established through use of expert witnesses to testify about such matters as the extent of the defendant's liability, the reasonableness of the damages amount in comparison with compensatory awards in other cases, and the expense which would have been required for the settling defendants to defend the lawsuit.*

919 So. 2d at 538 (emphasis added). The *Chomat* court also stated that bad faith or collusion where plaintiffs agree to share recovery with the insureds "involve the underlying facts of the case and do not involve the injection of privileged matters." 919 So. 2d at 538.

In *Chomat*, the underlying claim related to plaintiff's workplace accident in which he suffered severe injury from the loss of most of the fingers on both hands. 919 So. 2d at 536. Thus, the court could evaluate the settlement amount based on expert testimony regarding the liability of

plaintiff's workplace, the nature of the plaintiff's injury, the reasonableness of the damages amount in comparison to similar cases, and the expense plaintiff's workplace would have expended to defend the suit. *Chomat*, 919 So. 2d at 538.[5] Although the court in *Chomat* did not proclaim, as petitioners argue, that attorney-client communications could *never* aid in the evaluation of a settlement's reasonableness or to assess potential bad faith or collusion, the court found implied waiver should not apply given the facts of the case. 919 So. 2d at 538.

Next, petitioners cite to a Connecticut case, *Metropolitan Life Insurance Co. v. Aetna Casualty & Surety Co.*, to support the argument that attorney-client communications may contain only subjective evidence irrelevant to the objective determination of a settlement's reasonableness. 249 Conn. 36, 55, 730 A.2d 51 (1999). The *Metropolitan* court held that the reasonableness of the settlement should be examined under an objective standard and concluded, "[T]he exact communications between the plaintiff and its attorneys regarding the decision to settle, which would aid only in a subjective determination, are not at issue." 249 Conn. at 56.

The *Metropolitan* court further explained that reliance on legal advice to make a legal decision is not enough to put the advice at issue, but the court did not state that attorney-client communications could never be at issue in a settlement reasonableness hearing. 249 Conn. at 54. Rather, the *Metropolitan* court stated that the "'at issue,' or implied waiver, exception is invoked only when the contents of the legal advice is integral to the outcome of the legal claims of the

---

[5] *Chomat* is similar to the issues presented here: the reasonableness of the settlement arising from sexual abuse claims could be evaluated based on expert testimony regarding defendant's liability and plaintiff's damages, as well as comparisons to settlements in similar cases.

action," and noted that the implied waiver test may have applied if the plaintiff sought to prove reasonableness based upon the advice of counsel. 249 Conn. at 52-53.

Petitioners argue that these three cases compel the conclusion that a party cannot impliedly waive attorney-client privilege by seeking a settlement reasonableness determination because attorney-client communications are always "subjective evidence," which is irrelevant to the objective determination of whether a settlement is reasonable. Indeed, *Dana*, *Chomat*, and *Metropolitan* all conclude a reasonableness determination will primarily rely on objective evidence. But these cases do not support petitioners' assertions that attorney-client communications can *never* be integral to a reasonableness evaluation. Rather, *Dana*, *Chomat*, and *Metropolitan* suggest a case-by-case evaluation of whether attorney-client communications were put at issue in a settlement reasonableness evaluation.

Other jurisdictions have applied implied attorney-client communications waiver in the context of a settlement reasonableness hearing. *See, e.g.*, *GAB Bus. Servs., Inc. v. Syndicate 627*, 809 F.2d 755, 762 (11th Cir. 1987); *Conoco Inc. v. Boh Bros. Constr. Co.*, 191 F.R.D. 107, 117-19 (W.D. La. 1998); *Walters Wholesale Elec. Co. v. Nat'l Fire Ins. Co. of Pittsburgh, PA*, 247 F.R.D. 593, 596 (C.D. Cal. 2008). However, these cases, like the cases petitioners rely on, each make a case-specific inquiry whether a party asserting privilege initiated a claim that placed its privileged materials at issue and made discovery of such materials vital to the other party's case in response. Thus, we reject the contention that the implied waiver doctrine either "never" or "always" applies when a plaintiff seeks a determination of a settlement's reasonableness. We also reject the argument that a plaintiff *automatically* waives attorney-client privilege by requesting a reasonableness hearing. We conclude that the better rule is that the doctrine of implied waiver of

the attorney-client privilege may apply to settlement reasonableness hearings on a case-by-case determination after careful application of the *Hearn* factors. As discussed further below, rarely, if ever, will implied waiver of the attorney-client privilege occur where, like here, a third-party insurer invokes implied waiver of the plaintiff's attorney-client privilege in a settlement reasonableness hearing.

## V. RELEVANCY AND IMPLIED WAIVER

Petitioners argue that even if implied waiver of attorney-client communication privilege applies in the context of settlement reasonableness hearings, the superior court announced an improper standard in which privileged or protected material becomes automatically discoverable once deemed relevant to any of the *Glover* factors. We agree.

### A. STANDARD OF REVIEW AND RULES OF LAW FOR REASONABLENESS EVALUATIONS

It is an abuse of discretion for a court to use an incorrect legal standard. *Hundtofte v. Encarnacion*, 181 Wn.2d 1, 8, 330 P.3d 168 (2014). Determining the appropriate legal standard and assessing whether the trial court applied the correct legal standard are both issues of law we review de novo. *Hundtofte*, 181 Wn.2d at 13 (Madsen, C.J., concurring).

Regarding a covenant judgment settlement in Washington, RCW 4.22.060(1) provides that when parties enter into a release, covenant not to sue, covenant not to enforce judgment, or similar agreement, a determination that the amount to be paid is reasonable must be secured. RCW 4.22.060 applies to reasonableness hearings, including hearings reviewing covenant judgment settlements like that involved here. *Bird v. Best Plumbing Grp. LLC*, 175 Wn.2d 756, 764-68, 287 P.3d 551 (2012).

The court in *Chaussee v. Maryland Casualty Co.*, 60 Wn. App. 504, 512, 803 P.2d 1339, 812 P.2d 487 (1991), adopted the factors set out in *Glover v. Tacoma General Hospital*, 98 Wn.2d 708, 717, 658 P.2d 1230 (1983), *abrogated on other grounds by Crown Controls, Inc. v. Smiley*, 110 Wn.2d 695, 756 P.2d 717 (1988), to evaluate whether a settlement is reasonable under RCW 4.22.060:

> "[T]he releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults; the risks and expenses of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion, or fraud; the extent of the releasing person's investigation and preparation of the case; and the interests of the parties not being released."

*Chaussee*, 60 Wn. App. at 512 (alteration in original) (quoting *Glover*, 98 Wn.2d at 717). The settling party, here plaintiffs, have the burden to prove reasonableness using the *Glover/Chaussee* factors.

### B. RELEVANCY AS APPLIED BY THE SPECIAL DISCOVERY MASTER

Turning to the superior court's orders, the August 27 order[6] directed the special discovery master to determine (1) whether plaintiffs' documents contained privileged attorney work product

---

[6] We granted review of the superior court's November 22 order in light of the controlling question of "whether entering into a settlement waives the attorney-client and attorney mental impression privileges as to documents that would otherwise be privileged but that are directly related to the *Glover/Chaussee* factors." Ruling Granting Review in Part, at 10-11. Under RAP 2.4(b), we may review an order or ruling not designated in the notice of appeal where it "prejudicially affects the decision designated in the notice" and "is made, before the appellate court accepts review." RAP 2.4(b)(1)-(2). An order "prejudicially affects" the decision designated in the notice of appeal where the designated decision would not have occurred in the absence of the undesignated ruling or order. RAP 2.4(b). Without the superior court's August 27 order announcing how materials should be deemed discoverable by the special discovery master, the superior court would never have issued the November 22 order requiring production of the materials at issue here. Thus, under RAP 2.4(b), we consider the superior court's August 27 order.

opinions and mental impressions and/or attorney-client communications and then (2) directed the special discovery master that even if he found a document to be privileged or protected, he could recommend discovery of the document based on the application of an "exception" to the privilege that if the record is "directly related to one of the eight applicable *Glover/Chaussee* factors [it is] therefore waived for the purposes of a reasonableness hearing." CP at 2827.

The special discovery master then recommended that plaintiffs produce to Philadelphia documents that he found to be privileged as attorney-client communications or work product (or in some cases both) because they were directly related to the *Glover/Chaussee* factors. The superior court's November 22 order adopted these recommendations, applied implied waiver based on relevance or relatedness alone, and directed plaintiffs to produce all documents designated by the special discovery master as unprotected based on this "exception" to privilege and protection. These orders improperly applied a mere relevancy standard.

1.      *HEARN* REQUIRES MORE THAN MERE RELEVANCY

The *Hearn* test, applied in Washington in *Pappas*, requires consideration of the following three factors to find privilege has been impliedly waived:

> (1) [A]ssertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

114 Wn.2d at 207. As an overarching consideration, "the *Hearn* test will waive the privilege only where allowing the privilege to prevent disclosure would be manifestly unfair to the opposing party." *Dana*, 173 Wn. App. at 774. The party asserting that waiver has occurred, here

Philadelphia, bears the burden to prove the three factors of the *Hearn* test. *See Dana*, 173 Wn. App. at 775.

Although the plain language of the second prong of the *Hearn* test states that the party asserting a claim or defense put the protected or privileged information at issue "by making it relevant to the case," cases from this and other jurisdictions, including *Hearn* itself, demonstrate that courts actually consider whether the claim or defense asserted depends or relies on the information or whether the information is integral to the claim or defense before finding waiver.[7] Indeed, the court in *Dana* specifically held "relevance is not the test for waiver of attorney-client privilege." 173 Wn. App. at 777.

Here, although the superior court properly began the analysis of the second prong of the *Hearn* test by reviewing whether the materials at issue were "relevant to the case," it did not properly determine if proving the *Glover/Chaussee* factors depended on or was reliant on these materials to complete the second prong "at issue" analysis. *Dana*, 173 Wn. App. at 774-75. Under the *Hearn* test, the superior court also needed to find (1) that plaintiffs performed an affirmative

---

[7] *See Dana*, 173 Wn. App. at 776 (evaluating whether settlement reasonableness evaluation "depends on" attorney-client communications); *Hearn*, 68 F.R.D. at 582-83 (holding defendants impliedly waived attorney-client privilege where they raised a qualified immunity affirmative defense to a civil rights violations claim that they acted on advice of their counsel, so their defense *relied on* considering advice of counsel); *Metropolitan*, 249 Conn. at 51-54 (holding the "'at issue,' or implied waiver, exception is invoked only when the contents of the legal advice is integral to the outcome of the legal claims of the action," and "[m]erely because the communications are relevant does not place them at issue"); *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) (holding "'[p]rivileged communications do not become discoverable simply because they are related to issues raised in the litigation'" (quoting *S. Calif. Gas Co. v. Pub. Utils. Comm'n*, 50 Cal. 3d 31, 44, 784 P.2d 1373 (1990))); *Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 701 (10th Cir. 1998) (stating "[m]ere relevance, however, is not the standard" for implied waiver); *Conoco*, 191 F.R.D. at 110 (holding "waiver does not depend solely on the relevance of the privileged material").

act that (2) placed their attorney-client communications and their attorney's work product at issue when they sought a covenant judgment settlement agreement necessitating a reasonableness hearing and (3) that these materials were vital to Philadelphia's defense that the settlement was unreasonable under the *Glover* factors such that withholding them would be manifestly unfair. *See Pappas*, 114 Wn.2d at 207. The superior court did not apply this test before holding that plaintiffs waived their privilege. Thus, the superior court abused its discretion when it declared that relatedness—relevancy—to the *Glover* factors alone waived privilege "for the purposes of the reasonableness hearing" because this is an incorrect legal standard. CP at 2827; *Hundtofte*, 181 Wn.2d at 8.

2.    INCORRECT TEST APPLIED TO WORK PRODUCT

The next issue is whether the superior court applied the correct standard to hold that plaintiffs' counsel's mental impression and opinion work product were discoverable. We conclude it did not.

Regarding discovery of work product, CR 26(b)(4) allows such discovery only upon a showing of substantial need. And even where substantial need has been shown, disclosure of attorney mental impressions or attorney opinions in particular are "almost always exempt from discovery, regardless of the level of need." *Soter v. Cowles Pub. Co.*, 162 Wn.2d 716, 739, 174 P.3d 60 (2007). An exception to this strict rule applies and discovery should be allowed only where the material sought is central to a party's claim or defense. *Pappas*, 114 Wn.2d at 212-13.

The superior court did not conduct the proper test under CR 26(b)(4) to find substantial need for the discovery of plaintiffs' work product nor did it require a finding that the product was central to Philadelphia's defense; rather, it applied a relevancy standard to find protection was

impliedly waived. Our courts have not applied the implied waiver doctrine to waive work product protection, and the superior court offered no explanation why it did so here. Thus, we hold that the superior court abused its discretion when it applied an improper relevancy standard to direct the special discovery master's review in its August 27 order and when it adopted that standard in its November 22 order directing plaintiffs to produce protected materials.

### VI. PLAINTIFFS DID NOT IMPLIEDLY WAIVE PRIVILEGE OR WORK PRODUCT PROTECTION

Finally, petitioners argue that even under the proper standards, they did not impliedly waive attorney-client privilege nor was their work product discoverable. We agree with petitioners. We review de novo under the proper standards whether plaintiffs waived their attorney-client communications and work product privileges. *See Pappas*, 114 Wn.2d at 204-13.

### A. ATTORNEY-CLIENT COMMUNICATIONS

### 1. AN AFFIRMATIVE ACT

Petitioners argue that they did not perform an affirmative act that placed their privileged communications at issue because an affirmative act must be voluntary and they were required to seek a reasonableness determination under RCW 4.22.060, *Bird*, and *Meadow Valley Owners Ass'n v. Meadow Valley, LLC*, 137 Wn. App. 810, 813, 156 P.3d 240 (2007).[8] We conclude that plaintiffs performed an affirmative act under *Hearn*.

---

[8] Philadelphia contends that plaintiffs obtaining and using the insureds counsels' attorney-client communications and work product amount to an affirmative act under the *Hearn* test. Philadelphia does not support its contention that these materials, which it also received and can use in the reasonableness hearing, amount to an affirmative act by plaintiffs, asserting privilege of its *own* communications under *Hearn*. We do not consider claims unsupported by legal authority or argument. RAP 10.3(a)(6); *Cowiche Canyon*, 118 Wn.2d at 809. Thus, we decline to consider Philadelphia's argument regarding whether or not plaintiffs committed an additional affirmative act beyond entering the stipulated judgment and settlements necessitating a reasonableness hearing.

The first factor of the *Hearn* test to determine if there has been implied waiver of attorney-client privilege is assertion of the privilege resulting from some affirmative act, such as filing suit, by the asserting party. *Pappas*, 114 Wn.2d at 207. Following *Bird*, courts must consider the *Glover* factors in a reasonableness hearing pursuant to RCW 4.22.060(1). 175 Wn.2d at 766-68. RCW 4.22.060(1) states,

> A party prior to entering into a release, covenant not to sue, covenant not to enforce judgment, or similar agreement with a claimant shall give five days' written notice of such intent to all other parties and the court. . . . A hearing *shall* be held on the issue of the reasonableness of the amount to be paid with all parties afforded an opportunity to present evidence. A determination by the court that the amount to be paid is reasonable *must* be secured.

(Emphasis added.)

The language of RCW 4.22.060(1) thus makes a reasonableness hearing mandatory, but only after a party enters into and seeks to enforce a covenant like that at issue here. Although plaintiffs like those in this case who want to enforce a covenant judgment settlement clearly have a strong incentive to initiate a reasonableness hearing under RCW 4.22.060, contrary to petitioners' argument, nowhere in *Bird* or *Meadow Valley* does it state that plaintiffs *must* enter into and enforce a covenant judgment settlement. 175 Wn.2d 756; 137 Wn. App. 810.

Plaintiffs voluntarily entered into and sought to enforce the stipulated covenant judgment settlement agreements with the defendant insureds. Plaintiffs were required to initiate a reasonableness hearing if plaintiffs wanted to enforce the agreements against Philadelphia. As Philadelphia points out, plaintiffs had options other than settlement, including trial. Here, plaintiffs initiated the settlements and asked for the reasonableness hearing. Thus, plaintiffs' request for a reasonableness hearing satisfied the affirmative act factor of the *Hearn* test.

2.   PRIVILEGED MATERIALS NOT PLACED AT ISSUE

The second *Hearn* factor is whether the party asserting a claim or defense put the materials *at issue* by making it relevant to the case. *Pappas*, 114 Wn.2d at 207. When evaluating this factor, we consider whether the claim or defense asserted "depends on," "relies on," or makes the materials "integral to" resolution. *See Dana*, 173 Wn. App. at 776; *Hearn*, 68 F.R.D. at 581; *Metropolitan*, 249 Conn. at 51-54.

Philadelphia does not show how petitioners' claim of reasonableness or their own defense that the settlement is unreasonable "depends on," "relies on," or makes plaintiffs' attorney-client communications "integral to" resolution. *See Dana*, 173 Wn. App. at 776; *Hearn*, 68 F.R.D. at 581; *Metropolitan*, 249 Conn. at 51-54. Rather, Philadelphia argues what was known to plaintiffs is "particularly important" because (1) plaintiffs' counsel unilaterally authored the factual confessions included in the stipulated covenant judgment settlements and these confessions contradict the insured's previous sworn testimony and other presettlement evidence; (2) virtually all pertinent information about the reasonableness of the $25 million settlement appears to be possessed by plaintiffs' counsel; (3) every client communication, internal file note, and thought process of the insureds' counsel and the insureds' personal counsels were immediately turned over to plaintiffs' counsel without redaction; and (4) the insureds' personal counsels were deposed without restriction as to all relevant reasonableness factors giving plaintiffs' counsel access to weaknesses in the defense case at the time of settlement. Philadelphia offers these four points but does not explain *how* these points are connected to the reasonableness determination under *Glover* or why, given these four points, plaintiffs' attorney-client communications are integral to making that reasonableness determination.

Based on the descriptions used by the special discovery master, the privileged communications here appear to be e-mail communications between and among plaintiffs' attorney, fellow attorneys and firm staff, and the plaintiff clients. Philadelphia fails to explain why these communications are integral to assessing the *Glover* factors when in addition to the other significant discovery they already conducted, they have all communications between plaintiffs and the former defendant insureds, they have deposed two of the insureds' attorneys, and they have documentation that OELC's former employee only confessed to sexually abusing two of the children at OELC.

Additionally, Philadelphia can depose the plaintiffs to determine the strength of the abuse allegations in order to evaluate the settlement amount and the validity of the supporting confessions. As stated by the *Chomat* court, proof of reasonableness is ordinarily established through expert witness testimony about matters like the extent of defendants' liability, the reasonableness of the damages amount in comparison with awards in other cases, and the expense that would have been required for the settling defendants to defend the lawsuit. 919 So. 2d at 538. While plaintiffs' attorney-client communications may discuss elements of the settlement, because Philadelphia has not shown that those communications are integral to the reasonableness determination here, we conclude that plaintiffs did not place them at issue.

3. PRIVILEGED MATERIALS NOT VITAL TO PHILADELPHIA AND NO MANIFEST UNFAIRNESS

Philadelphia argues that application of the attorney-client privilege would deny it vital information because the privileged information is directly relevant to the reasonableness of the stipulated covenant judgment settlement and plaintiffs' counsel is the only party who knows about the basis of the settlement. We disagree.

The third *Hearn* factor is whether withholding privileged information will deny the opposing party access to information vital to its defense. *Pappas*, 114 Wn.2d at 207 (citing *Hearn*, 68 F.R.D. at 581). As part of this inquiry, we consider whether withholding the privileged information would be manifestly unfair to the opposing party. *Dana*, 173 Wn. App. at 774.

Protected communications are vital to a party's case when they contain information about a disputed issue that is not available from any nonprivileged source. *Dana*, 173 Wn. App. at 776 (citing *United States v. Amlani*, 169 F.3d 1189, 1195-96 (9th Cir. 1999)). Protected communications are not vital to a party's case when there are other sources of indirect evidence about the issues. *Dana*, 173 Wn. App. at 776 (citing *Amlani*, 169 F.3d at 1195). Parties typically prove the reasonableness of settlements through expert witness testimony on the relevant reasonableness criteria. *Chomat*, 919 So. 2d at 538.

The *Glover/Chausee* factors to evaluate whether a settlement is reasonable under RCW 4.22.060 again are

> "[t]he releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults; the risks and expenses of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion, or fraud; the extent of the releasing person's investigation and preparation of the case; and the interests of the parties not being released."

*Chaussee*, 60 Wn. App. at 512 (quoting *Glover*, 98 Wn.2d at 717). Plaintiffs, as the settling party, have the burden to prove reasonableness using the *Glover/Chaussee* factors. *Bird*, 175 Wn.2d at 766.

Here, plaintiffs produced nearly 200,000 pages of discovery to Philadelphia that included all records given to them by the defense attorney. Plaintiffs directed the former defendants' attorney to provide Philadelphia with any additional requested production. In addition, plaintiffs

have produced to Philadelphia nonprivileged materials including medical records, public records request responses, witness communications, expert communications, subpoenas, pleadings, documents received in discovery, and other case-related documents. Philadelphia has deposed the attorneys for OELC's president and executive director. And Philadelphia has the police report that documents a confession to sexual abuse of two children who attended OELC. Finally, plaintiffs and Philadelphia agreed in prior discovery hearings that calling experts to testify regarding the settlement's reasonableness was necessary and proper.

Besides simply reiterating that plaintiffs' counsel drafted the factual confessions supporting the settlements and selected the settlement amounts, Philadelphia does not explain *why* plaintiffs' attorney-client communications are vital to its defense or *why* the discovery already exchanged is insufficient to evaluate the settlement's reasonableness. Because many other sources of nonprivileged evidence are available to Philadelphia, plaintiffs' protected communications are not vital to Philadelphia's defense nor is it manifestly unfair to withhold these materials from Philadelphia. *Dana*, 173 Wn. App. at 774, 776.

We conclude that implied waiver of the attorney-client privilege may occur in the context of a settlement reasonableness hearing under certain limited circumstances. But not those presented here. We further hold that implied waiver of the attorney-client privilege will rarely, if ever, occur where like here a third-party insurer invokes implied waiver of the plaintiffs' attorney-client privilege in a settlement reasonableness hearing.

## B. ATTORNEY OPINION AND MENTAL IMPRESSION WORK PRODUCT

Philadelphia argues that plaintiffs' motion for a reasonableness determination made plaintiffs' mental impressions and opinions central to this case. We disagree.

Opinion work product enjoys nearly absolute immunity and the mental impressions of an attorney are also almost always exempt from discovery, regardless of level of need, unless their mental impressions are directly at issue. *Soter*, 162 Wn.2d at 739-41. The court may release work product only in very rare and extraordinary circumstances. *See Upjohn Co. v. United States*, 449 U.S. 383, 401, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981); *Pappas*, 114 Wn.2d at 211. Discovery should be allowed only when crucial information is in the exclusive control of the opposing party and where the material sought is central to a party's claim or defense. *Pappas*, 114 Wn.2d at 210.

Here, based on the special discovery master's descriptions, the materials at issue are intraoffice e-mails among attorneys and staff at plaintiffs' attorney's firm. Philadelphia fails to show how these materials containing plaintiffs' opinion and mental impression work product are crucial or central to its case.

The *Glover/Chaussee* factors include damages, the merits of their liability theory, the merits of the insureds' defense theory and relative fault, the risks and expenses of continued litigation, the insureds' ability to pay, evidence of bad faith, collusion, or fraud, the extent of plaintiffs' preparation and investigation, and the interests of Philadelphia may all be assessed based on other evidence in Philadelphia's possession and the discovery already submitted to Philadelphia. *Bird*, 175 Wn.2d at 766. Because plaintiffs' counsel's work product opinion and mental impressions have not been shown to be central to plaintiffs' claim that the settlement is

reasonable or to Philadelphia's defense that the settlement was unreasonable under *Glover/Chaussee*, plaintiffs' work product should remain protected.[9]

In sum, we hold that implied waiver of privileged communications may occur outside legal malpractice cases and in limited circumstances in the context of reasonableness hearings under RCW 4.22.060(1). We further hold that under the *Hearn* test, plaintiffs did not impliedly waive their privileged communications nor was their work product discoverable because Philadelphia has not shown that the work product was central to Philadelphia's defense.

We reverse and remand to the superior court for proceedings consistent with this opinion.

JOHANSON, J.

We concur:

WORSWICK, P.J.

LEE, J.

---

[9] Philadelphia raises additional issues including whether (1) plaintiffs invited error or waived their argument regarding whether the implied waiver doctrine applies outside the context of legal malpractice claims, (2) plaintiffs directly waived their attorney-client privilege or work product protection regarding the communications at issue by selective disclosure, (3) plaintiffs' counsel waived attorney-client privilege or work product protection by making himself a necessary witness, and (4) Washington's civil fraud exception applies in this case. We do not consider these issues because they are outside the scope of the order granting discretionary review.